MOSES WILLIAMS & another, trustees, *vs.* MARY MARTHA
TAYLOR & others.

Suffolk.   May 20, 27, 1931. — September 8, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Devise and Legacy*, Power of appointment.   *Words*, "Then."

The will of one, who died in 1878 leaving a son and three daughters,
placed the residue of his property in trust to pay the income to his
children and issue of any deceased child until the death of all his
children and the death or marriage of the husbands of his daughters
"or [*sic*]" the wife of his son, and then "to convey all said trust prop-
erty . . . to and among all my grandchildren then living, in equal
shares, and to the issue of any deceased grandchild then living, by right
of representation"; and provided that, as to any of such gift as, "upon
the termination of the trust," might come to a grandchild born in
the testator's lifetime, such share "shall be further held and disposed
of, principal and income, in the manner and upon trust or otherwise
as provided in any instrument in writing in the nature of a will . . .
by any child of mine who is the parent of such grandchild, provided
however . . . that no part of the principal . . . shall be given to . . .
persons other than the issue of my said child and the husbands and
wives of such issue, and the relatives by blood of such child"; and if
not disposed of by will said share was to go to the grandchild and
his or her heirs at law.   At the death of the last of the children
and their respective spouses, three grandchildren of the testator were
living, a grandson and a granddaughter who were children of his
son and who were living at the testator's death, and a granddaughter
who was a child of a daughter.   The trust fund thereupon was di-
vided into thirds, and two thirds of it were held by trustees under
the will of such son, which, with respect thereto, after a recital of the
provisions of his father's will describing the power given him, stated:
"Now Therefore, I do hereby by virtue of said power, and meaning
to exercise all powers given me by said will, direct and appoint as
follows": — that each child's share be placed in trust, the income to
be paid him or her during his or her life without power of alienation
or incumbrance on his or her part, and on his or her death, "the prin-
cipal share, the income of which was paid to him or her during his or
her lifetime, shall be paid over to the parties who shall then be entitled
to receive the same according to the provisions of my father's will.
And I especially and earnestly request my children, if they shall dis-
pose by will of their respective shares of the said trust property com-
ing to them under my father's will, that they will not give any part
of the principal or income thereof to any person or persons other than
my surviving children, and the relatives by blood of my children, or

their husbands or wives; believing that this request is in accord with my father's wishes and is for the best interest of my family." The granddaughter, child of the daughter of the original testator, died and, after her, the grandson, who had not married, leaving a will and his sister surviving him. His will made many bequests and legacies to persons not related to him by blood or marriage, and provided: "All the rest and residue of my property of every kind, including any and all property over which I shall have a power of disposition by will, deed or otherwise, I give to" trustees, to pay certain annuities to some persons not related to him by blood or marriage, to his sister and her husband, and to his sister-in-law, and, on the death of the surviving life beneficiary, to distribute the fund among certain persons not related to him by blood or marriage and to certain charitable and educational institutions. Upon a petition for instructions by the trustees under the will of the original testator's son as to what distribution should be made of the grandson's half of the fund held by them, the executor of the grandson's will and his surviving sister each claimed such fund, and the executor of the will of the other granddaughter of the original testator, who had died before the grandson, claimed one third of such fund. A decree was entered in the Probate Court that, so far as such trust estate consisted of personal property, it should be paid to the executor of the will of the grandson, and so far as it consisted of real estate, it should be transferred and conveyed to the person or persons entitled thereto under the will of the grandson. The grandson's sister alone appealed. *Held*, that

(1) The son of the original testator by his will intended to and did exercise the power of appointment given by the will of the original testator as to the share therein given to the grandson;

(2) By such exercise, the grandson's right and power to dispose of such share by his will was not limited;

(3) The phrase, "then be entitled to receive the same," in the will of the son of the original testator, was not used to fix a time for determining a class, but was used to fix a time for payment, namely the death of the life beneficiary, when the remainder was to come into possession;

(4) The appellant was not entitled to share in the fund;

(5) There was nothing either in the will of the original testator or in that of his son which supported a contention, urged by the executor of the will of the other granddaughter of the original testator, that such fund should be distributed among the grandchildren of the original testator living at the death of all his children and the death or marriage of their spouses; such granddaughter was not entitled to share in the fund here in question;

(6) The decree of the Probate Court was right.

PETITION for instructions, filed in the Probate Court for the county of Suffolk on January 7, 1931, and afterwards amended, by trustees under the will of Richard T. Parker.

Respondents were Mary Martha Taylor, executors and trustees under the will of James Parker, late of Hamilton (hereinafter called James Parker the younger), the executor of the will of Anna P. Lowell, late of Cambridge, the President and Fellows of Harvard College, the Museum of Fine Arts, Boston, and the Massachusetts General Hospital. All the respondents by their answers admitted the allegations of the amended petition.

From the pleadings, besides the facts stated in the opinion, the following facts appeared:

James Parker the elder died September 15, 1878, leaving one son, Richard T. Parker, the petitioners' testator, and three daughters: Sarah C. Parker (afterwards Goodhue), Mary E. Parker (afterwards Lowell) and Anna T. Parker (afterwards Coolidge). At the time of the death in 1917 of the survivor of the children of James Parker the elder and the wife of Richard and the husbands of the daughters, there were surviving of their issue only one daughter of Mrs. Lowell, Anna P. Lowell; and a son, James Parker the younger, and a daughter, Mary Martha Taylor, children of Richard T. Parker; a third son of Richard, Charles T., had died September 1, 1912.

Richard T. Parker died on October 3, 1904. Anna P. Lowell died without issue on March 23, 1930. James Parker the younger, never having married, died on October 18, 1930. Mary Martha Taylor's husband died in 1928; she was living when the petition was filed and had no issue.

By the provisions of his will and codicils, James Parker the younger, after numerous bequests and legacies to persons not related to him by blood or marriage, gave his sister Mary Martha Taylor and his sister-in-law Susan Day Parker $10,000 each, and then by a clause 8 gave the rest and residue of his "property of every kind, including any and all property over which I shall have a power of disposition by will, deed or otherwise," to trustees (a) to pay an annuity of $1,200 to Grace P. Shearer, the adopted daughter of his brother, subject to certain conditions; (b) to pay an annuity of $10,000 to his sister-in-law Susan Day Parker for her life, and, on her death, to his sister

Mary Martha Taylor; (c) the balance of the income to his sister during her life, on her death or if she did not survive him, to her husband, and on the death of both, or if neither survived, to Susan Day Parker, if living for her life, or, if she was not living or upon her death, the said balance to be added to principal until the expiration of the trust; (e) the trust was to continue until the death of the testator's sister and her husband, and his sister-in-law (with certain contingencies not material) and, on its termination, $30,000 was to be paid to Grace P. Shearer, if living, and, if she were not living, to her issue; and the balance (or the whole in a certain contingency,) one third each to the President and Fellows of Harvard College, the Museum of Fine Arts, Boston, and Massachusetts General Hospital.

The only persons at the date of the filing of the petition having any interest (except the three respondent charities which took in remainder), in the trust fund created by the will of James Parker the younger were Mary Martha Taylor, Susan Day Parker, and Grace P. Shearer.

Half of the trust fund held by the petitioners as trustees under the will of Richard T. Parker was held for the benefit for life of James Parker the younger. On his death the trust terminated as to said half, which was therefore to be distributed in accordance with article five of the will of Richard T. Parker described in the opinion.

The total fund held by the petitioners, half of which was the subject of the petition, consisted of real estate in Boston of the assessed value at the death of James Parker the younger of $810,000 and of personal property of the value at the death of said James Parker of approximately $400,000.

The property owned by James Parker the younger, at his death in his own right (without including the trust fund) was amply sufficient, after the payment of all pecuniary legacies given by his will and codicils, to support the annuity of $10,000 per year given to Susan Day Parker, the annuity of $1,200 per year given to Grace P. Shearer and the $30,000 given to Grace P. Shearer or her issue by clause 8e of his will.

The suit was heard in the Probate Court by *Dolan,* J., by whose order there was entered a decree directing distribution of the trust estate held by the petitioners during the life of James Parker the younger as follows: "In so far as said trust estate consists of personal property to pay the same to the executors of the will of [said] James Parker . . .; and in so far as said trust estate consists of real property to transfer and convey the same to the person or persons entitled thereto under the will of said James Parker . . . "

Mary Martha Taylor alone appealed.

*J. Noble,* for Mary Martha Taylor.

*S. Vaughan,* for A. Lawrence Lowell, executors.

*R. Homans,* (*F. Adams* with him,) for Robert S. Barlow and another, executors, and others.

*P. Ketchum,* for The President and Fellows of Harvard College; *R. C. Curtis,* for the Museum of Fine Arts; and *J. Abbott,* for Massachusetts General Hospital, were present in court but neither argued nor filed a brief.

*H. P. Goldstein, H. F. Carey* of Michigan, & *J. H. Cohen* of New York, by leave of court, submitted a brief as *amici curiae.*

CARROLL, J.   This is a petition for instructions by trustees under the will of Richard T. Parker. James Parker of Boston, hereinafter referred to as James Parker the elder, died in 1878. He was the father of Richard T. Parker and the grandfather of Mary Martha Taylor and of James Parker, hereinafter spoken of as James Parker the younger. James Parker the elder gave the rest and residue of his property, subject to certain annuities, in trust to pay the income to his "children living" and the "issue living" of a deceased child, until the death of all his children and the death or marriage of the husbands of his daughters "or [*sic*]" the wife of his son; and upon the death of his children and after all income shall cease to be payable to their husbands or wives, "to convey all said trust property, principal and income then undisposed of, to and among all my grandchildren then living, in equal shares, and to the issue of any deceased grandchild then living, by right of representation,

to hold to them, their heirs and assigns forever." "The preceding gift upon the termination of the trust" of the share which would come to a grandchild born in the life-time of James Parker the elder was made subject to the provision in regard to such share "that the same . . . shall be further held and disposed of, principal and income, in the manner and upon trust or otherwise as provided in any instrument in writing in the nature of a will . . . by any child of mine who is the parent of such grandchild, pro-vided however, that in no event shall said share or the income thereof, be . . . held in trust or the vesting thereof be therein and thereby postponed beyond the period of the death of such grandchild; and provided further, that no part of the principal . . . shall be given to . . . per-sons other than the issue of my said child and the husbands and wives of such issue, and the relatives by blood of such child"; and if not disposed of by will said share to go to the grandchild and his or her heirs at law.

Richard T. Parker died on October 3, 1904, leaving a will, article five of which, so far as material, is in these words: "Whereas by the will of my late father certain property was put in trust until the death of his children or the survivor of them or the death or marriage of the husbands or wives of his children . . . and on the termination of said trust then to divide the said property into as many shares as there should be grandchildren of my father then living and grandchildren then deceased who had left issue then living. And whereas by said will I am given the power of appoint-ment" by will "how the shares of said property which will be set apart for such of my children as were born during the lifetime of my father shall be held and disposed of during their lives, principal and income: Now Therefore, I do hereby by virtue of said power, and meaning to exercise all powers given me by said will, direct and appoint as fol-lows": — The testator Richard T. Parker then directs that the principal of the shares set apart for his three children, James, Charles Thorndike, and Mary Martha, be placed in trust, each child's share of the income to be paid to each dur-ing his or her life. "And on the death of each of my said chil-

dren the principal share, the income of which was paid to him or her during his or her lifetime, shall be paid over to the parties who shall then be entitled to receive the same according to the provisions of my father's will. And I especially and earnestly request my children, if they shall dispose by will of their respective shares of the said trust property coming to them under my father's will, that they will not give any part of the principal or income thereof to any person or persons other than my surviving children, and the relatives by blood of my children, or their husbands or wives; believing that this request is in accord with my father's wishes and is for the best interest of my family."

James Parker the younger, son of Richard T. Parker, died on October 18, 1930, leaving a will and codicils, in which he gave the residue "including any and all property over which I shall have a power of disposition by will" in trust to make certain payments. The property of James Parker the younger is sufficient without including the fund in question, after payment of all pecuniary legacies, to pay the annuities mentioned and we do not understand that any contention is made that James Parker the younger failed to carry out his father's wish.

Barlow and Watson are the executors and/or trustees under the will of James Parker the younger. Anna P. Lowell, who died March 23, 1930, was a grandchild of James Parker the elder; A. Lawrence Lowell is the executor of her will.

Half of the trust fund under the will of Richard T. Parker was held for the benefit of James Parker the younger. Instructions asked are whether the half of the fund goes under clause 8 of the will of James Parker the younger or otherwise to Barlow and Watson, or whether it goes to the respondent Mary Martha Taylor under the will of Richard T. Parker and/or the will of James Parker the elder or otherwise, or whether under said wills or otherwise the fund is to be divided between said respondents and A. Lawrence Lowell as executor of the will of Anna P. Lowell.

In the Probate Court it was decided that the personal property of the fund was to be paid to the executors of the

will of James Parker the younger and the real was to go to the persons entitled thereto under his will. Mary Martha Taylor appealed. She contends that she is entitled to the share of the principal of the fund which James Parker the younger would have received under the will of James Parker the elder if Richard T. Parker had not exercised the power of appointment. The respondent A. Lawrence Lowell, executor of the will of Anna P. Lowell, contends that one third should go to him as executor, one third to Mary Martha Taylor, and one third to the executors of the will of James Parker the younger.

In our opinion the decision of the Probate Court was right. Richard T. Parker exercised the power of appointment given him by his father's will. In the will of Richard T. Parker he refers to the power of appointment in his father's will authorizing him to dispose of the shares set apart for his children, and says "Now Therefore, I . . . by virtue of said power, and meaning to exercise all powers given me by said will, direct and appoint as follows." He then proceeds: ". . . on the death of each of my said children the principal share . . . shall be paid over to the parties who shall then be entitled to receive the same according to the provisions of my father's will." Then follows this request: ". . . I especially and earnestly request my children, if they shall dispose by will of their respective shares" not to give any part of their share to any one "other than my surviving children, and the relatives by blood of my children, or their husbands or wives; believing that this request is in accord with my father's wishes and is for the best interest of my family."

Richard T. Parker intended to exercise the power of appointment. His reference to the will of his father and his expressed purpose to act under the power signify this intention; and he also, in our opinion, gave to each of his children an equitable life estate and a remainder in fee. This is shown by the words that on the death of each child his or her share was to be paid to the one who shall then be entitled to receive the same according to the provisions of his father's will, and in the request that no

part, not only of the income but of the principal as well, should be paid to others than members of the family. The use of the word "principal" is significant of his desire that the remainder should belong to his children. This wish that the children should have the remainder in fee also appears in the power of disposition of the share by will. Richard T. Parker does speak of the share coming to his children "under . . . [his] father's will," but we interpret these words as a reference to the will of his father as the source from which the property came. We do not think that the remainders pass under the will of James Parker the elder because Richard had the power of appointment given him by his father and exercised it.

Richard T. Parker recognized the provisions of his father's will, he sought to carry them out, and by his own will sought to fulfill the desire of his father. Richard knew his father provided that, on the death of all his children and their spouses, the residue of his estate should go to his grandchildren then living and the issue of a deceased grandchild then living. Richard appreciated that his father gave to him the power of appointment over the shares of his children; that the vesting should not be postponed beyond the death of such grandchild; that no part of the principal or income should go, under the appointment, to persons other than the issue, the husband or wife and relatives by blood of such grandchild, and further, if not lawfully disposed of by will, the grandchild's share was to vest in him and his heirs at law. Richard in his will refers to his father's will, he appreciated that he was acting under it, and desired fully to exercise all the powers given him. He provided that the shares of his children were to be in trust, each child's income was to be paid to him or her, and on the death of each child the principal of such share was to be paid to the parties entitled to the same according to the will of James Parker the elder. Richard, also following his father's wish, requested that the disposition by his children should be limited to relatives by blood or their spouses. Richard by his will gave to each of his children who could take on the termination of the trust to the children of his father, James

Parker the elder, a remainder in fee. This is shown by the words of the will: ". . . on the death of each of my said children the principal share, the income of which was paid to him or her during his or her lifetime, shall be paid over to the parties who shall then be entitled to receive the same according to the provisions of my father's will." Richard by this provision intended to dispose of the principal of the share and was giving it to the heirs of his son James or to those then entitled to it by his will. This intention is shown by the request of Richard that no part of the share, not only income but principal as well, should be paid to others than those of the family. The use of the word "principal" is here significant. Further, Richard speaks of the disposition by the wills of his children and again refers to the principal of the share coming to them by his father's will, showing that they could dispose of the principal by will. And in referring to his father's will he makes plain the source of his own authority and power of appointment, and his desire to give to his children entitled to share in the property the portion which belonged to each. As we interpret his will his dominant purpose in disposing of the share of each was that each one of his children then alive and entitled to a share should have the right to dispose of it by will.

It is contended by the appellant that the words "shall be paid over to the parties who shall then be entitled to receive the same" in the sentence of the will of Richard T. Parker, "And on the death of each of my said children the principal share, the income of which was paid to him or her during his or her lifetime, shall be paid over to the parties who shall then be entitled to receive the same according to the provisions of my father's will," mean that on the death of James Parker the younger, his sister surviving him, his share should go to her; that by the words quoted Richard contemplated a class different from that named by his father.

The sentence just quoted, from the will of Richard, is to be construed with the other language of his will, and particularly with the words of article five where the sentence appears. He intended that the property should pass under

the power given to him by his father.  Richard had in mind the share of each of his children; he sought to protect their income by the spendthrift trust; he established and gave to each the right to dispose of his or her share by will.  He put in trust the share of his son James for his life.  On his death he was to control the share by his will subject to his father's bequest, just as James Parker the younger would have the right to do during his lifetime, if his father had not created the trust for his life.  It seems to us inconsistent with the right of Richard's children to dispose of his or her share by will, the right which Richard gave to each child entitled to a share, to say that the testator meant by the words "then be entitled to receive" to take away this right of disposal, and give his son's share to another child.  In the ninth article of Richard's will he says that no person entitled to any income or principal hereunder shall have any power to dispose of the same by anticipation or to subject the same to his or her debts or liabilities.  This indicates that Richard contemplated that his son had control over the principal of the share, that this share was his.

We are of opinion that the word "then" followed by the words "be entitled to receive," in article five of Richard's will, was not used to fix a time for determining a class, but was used to fix a time for payment, namely the death of the life tenant, when the remainder was to come into possession. "The word 'then' is here inserted, not as in *Long* v. *Blackall*, 3 Ves. 486, in *Sears* v. *Russell*, 8 Gray, 86, and in *Thomson* v. *Luddington*, 104 Mass. 193, by way of description of the persons who are to take, but by way of defining the time when they shall come into the enjoyment of that which is devised to them." *Dove* v. *Torr*, 128 Mass. 38, 40.  It was said in *Porter* v. *Howe*, 173 Mass. 521, at page 528, that the words "further" and "then" ordinarily denote nothing more than an order of sequence.  *State Street Trust Co.* v. *Sampson*, 228 Mass. 411.  *Brown* v. *Spring*, 241 Mass. 565, 568; *Hedge* v. *State Street Trust Co.* 251 Mass. 410, 413.  *Thompson* v. *Clarke*, 264 Mass. 56, 60.  Even if it could be considered that the expression "then be entitled to receive" was of doubtful meaning, the final statement of the testator

in article five is controlling and gave to each child the right to dispose of his or her share. "In case of irreconcilable differences, a clear and unambiguous provision, coming later in the will, controls, as being more likely to express the final purpose of the testator." *Shattuck* v. *Balcom,* 170 Mass. 245, 251. *Turnbull* v. *Whitmore,* 218 Mass. 210, 215.

It remains to consider the contention of the executor of the will of Anna P. Lowell. When Mrs. Goodhue, the last of the survivors under the trust of James Parker the elder, died in 1917 (Charles T. Parker, a son of Richard, having died in 1912) the residuary trust under the will of James Parker the elder was divided into three shares for the then surviving grandchildren, that is, James Parker the younger, Mary M. Taylor, and Anna P. Lowell, who was the daughter of Mary Parker Lowell; she at that time received her one third share. James Parker and Mary M. Taylor were her first cousins. Her executor contends that the fund should be distributed one third to him, one third to Mary M. Taylor and one third to the executor under the will of James Parker the younger; that, as the will of Richard T. Parker provided that on the death of each of his children the principal share was to be paid over to the parties who should then be entitled to receive the same according to the provisions of his father's will, and James Parker the elder in his will provided "to convey all said trust property . . . to and among all my grandchildren then living, in equal shares," the "then" referred to was January 13, 1917, when the trust in James Parker the elder's will terminated, and that accordingly the fund should be divided as the executor of Anna P. Lowell contends.

James Parker the younger took one third under his grandfather's will which he could dispose of were it not for the power given to his father, who left the entire fund coming to him in trust, the income to be paid to his children. On the death of each of his children then entitled to share, the principal of the share was to be paid to those entitled to it according to his father's will. He intended by his will that his children could dispose of their shares. There is nothing in James Parker the elder's will to indicate that

other grandchildren should have an interest in the specific share of James Parker the younger, and Richard appointed each specific share to those entitled to the same share under the will of his father. Richard desired that the share of James Parker the younger should not go to others than members of his family. When Richard died he did not know that his son James would have no children, and he did not intend to deprive his son of the right to provide for his issue by will and to give a portion of his share to his. cousin. Richard did not intend that on the death of his son his share should be split up into thirds among the three grandchildren who were living in 1917. There is nothing in the will of either James Parker the elder or Richard which supports this construction.

It follows that the decree of the Probate Court giving the personal property of James Parker the younger's share to his executors and the real estate to those thereto entitled under his will is affirmed. Costs to be taxed as between solicitor and client to be paid out of the estate are to be in the discretion of the Probate Court.

*Ordered accordingly.*