MARY N. POOR & another, trustees, *vs.* NINA MARIA POOR HODGE & others.

Middlesex.    February 2, 3, 1942. — April 1, 1942.

Present: FIELD, C.J., QUA, COX, & RONAN, JJ.

*Trust*, Investments. *Probate Court*, Costs. *Words*, "Interest bearing securities."

Upon consideration of a will in its entirety in the light of various circumstances known to the testator, a provision, that trustees under the will should invest in "good, safe, interest bearing securities so as to produce an income," permitted their investing in suitable income-producing stocks.

Upon a motion for costs and expenses addressed to this court by a guardian
  ad litem appointed by the Probate Court in the matter of trustees'
  accounts under G. L. (Ter. Ed.) c. 206, § 24, as appearing in St. 1938,
  c. 154, § 1, this court determined that his compensation should be
  fixed by the Probate Court.

PETITION in the Probate Court for the county of Middlesex for the allowance of accounts.

The case was heard by *Leggat,* J.

*R. W. Meserve,* (*L. H. Parks* with him,) for the respondents.

*Gilbert W. Cox,* (*T. K. Ware & J. L. Ware* with him,) for the special administrator of Mary N. Poor, trustee, and the administrator of Charles E. Ware, trustee.

Cox, J. This is a report under G. L. (Ter. Ed.) c. 215, § 13, by a judge of probate who allowed several accounts of the trustees and surviving trustee under the will of Franklin N. Poor that came before him for decision on a case stated.

The testator made his will on March 31, 1903. The accountants, who were named therein as trustees, were appointed on December 26, 1906. The residue of the testator's estate was given to the trustees upon two trusts, but the accounts in question concern only one of these trusts consisting of one half of the residue, which was set up in clause Fifth, Section A, of the will. This trust is for the benefit of the testator's daughter, Nina Maria Poor Hodge, during her life, and thereafter for the benefit of her children who are living at her decease and the issue of any deceased child by right of representation, upon terms that need not be stated. The life beneficiary is living, as are her unmarried daughter and a married son who has a minor daughter. A guardian ad litem was appointed in the matter of the settlement of the accounts in question, and he filed a report. No contention is made that the trustees at any time acted in bad faith, or that they had made investments, or held investments coming from the testator, not permitted to trustees, unless any investments made or held were improper because they were not "interest bearing securities" within the meaning of these words as used

in the will; and, in view of the provisions of the will that the trustees are answerable for wilful default only, it is not contended that the accounts are contestable on the ground that investments, if found to have been "interest bearing securities" at the time they were made by the trustees or came into their hands, have been held too long. The trustees' inventory shows, as assets turned over to them by the executrix, four blocks of stock, two preferred and two common, three mortgage notes, several notes described by the testator in his will as worthless, some old coin, two savings bank deposits, a deposit in a trust company and one $1,000 bond of the Commonwealth. The first twelve accounts of the trustees, covering the period from December 26, 1906, to December 31, 1918, were allowed on May 28, 1920, by decrees, reciting in usual form that all persons interested had consented to their allowance in writing. These accounts were assented to by the life beneficiary, her daughter and son. No guardian ad litem was appointed or consented to their allowance. The twelfth account of the trustees showed that they held various corporate stocks as trust funds, as do all subsequent accounts.

The main question to be decided is whether certain investments that are shown in the trustees' "inventories" and accounts, other than bonds and notes, are "interest bearing securities" within the meaning of these words as used in the will.

Clause Fifth, Section A of the will provides, among other things, that the trustees are to hold one half of the residue of the testator's estate, "keeping the same invested in good, safe, interest bearing securities so as to produce an income." This same language appears in clause Fifth, Section B, with reference to the other trust. The will, however, by clause First, after naming the trustees, but not the executrix or executor, contains the following language: "I give to my said Trustees, or the survivor of them, and to their successors in these Trusts full power and authority to sell by private sale or public auction and convey any of the Trust property and estate, real or personal, held by them in Trust

under this WILL, and to invest the proceeds in such other real and personal estate as may seem to them prudent, and such investments to change from personal to real, and real to personal, as the convenient and prudent management of the Trusts may require . . . ." Clause Seventh of the will appoints one of the testator's daughters, also named as trustee, as executrix, and, in case of her decease, the other trustee named in clause First is named as executor. This clause also contains the following provisions: "My said Executrix or said Executor are hereby given authority in their discretion to determine what monies, received or expended in any way or manner, are to be treated as capital, and what not, and in distributing or transferring any devise or bequest, or any fund or portion of the Trust estates finally to any party entitled hereunder, they may do so by transferring such stock or other securities . . . as they shall deem in kind and amount will make justly the portion intended."

The fundamental rule for the construction of wills has repeatedly been stated. The purpose is to ascertain the intention of the testator from the whole will, attributing due weight to all its language, considered in the light of the circumstances known to him at the time of its execution, and to give effect to that intent unless some positive rule of law forbids. *Fitts* v. *Powell*, 307 Mass. 449, 454, and cases cited. "It is a familiar rule, in the construction of wills, that the intention of the testator is to govern, although it may be opposed to some of the words of the will; and that the general intention is to control any particular intention, especially when the particular intention relates to the manner by which the general intention is to be effectuated." *Malcolm* v. *Malcolm*, 3 Cush. 472, 477. In *Pratt* v. *Rice*, 7 Cush. 209, it was held that a devise of an undivided part of the testator's property must yield to a subsequent provision in the will authorizing the executors, at their discretion, to sell and convey a part or the whole of the estate. There it was said that the entire will is to be read in deciding upon the effect of a particular devise. "If any preference is to be made in reference to the order in which the

clause is inserted in the will, the last is rather entitled to it than the first. But the will is to be taken as a whole, and the later provisions therein are to be taken as modifying those preceding, whenever such appears to have been the intention of the testator." (Page 212.) See *Shattuck* v. *Balcom*, 170 Mass. 245, 251. It seems that the general power conferred upon the trustees by clause First of the will is not an independent statement of the testator's intention, having no relation whatever to the language contained in clause Fifth, Section A, relative to keeping the trust funds invested in interest bearing securities. See *Pope* v. *Pope*, 209 Mass. 432, 441; *Sears* v. *Childs*, 309 Mass. 337, 346, 347. If it be assumed that the two provisions are repugnant, the language of the court in *Taylor* v. *Albree*, 309 Mass. 248, is applicable, where it is said, at page 258: "Reliance is placed by some of the parties upon the rule that of two repugnant provisions the one appearing later in the will is to be deemed to express the final purpose of the testator . . . but the rule itself is a highly conventional one to which resort should be had only where a scrutiny of the whole will fails to reveal the testator's intent with reasonable certainty." *Brummett* v. *Hewes, ante*, 142, 147.

In the search for the answer to the question presented, we consider the "light of the circumstances" known to the testator at the time of the execution of the will. *Fitts* v. *Powell*, 307 Mass. 449, 454.

The testator was for forty years the treasurer of the Vermont and Massachusetts Railroad Company, and the deceased trustee Ware was the president. It was agreed that the trustee Poor would testify that the testator, "during his life," said to her with reference to the stock of this railroad: "Don't ever part with it, it's better than a bond." The value of the four blocks of stock, as disclosed by the trustees' inventory, was $32,971, of which $26,010 was given as the value of the one hundred fifty-three shares of the stock of this railroad. The total value of the assets turned over to the trustees, as disclosed by the inventory, was $60,486.29, including notes of the testator's son-in-

law inventoried at $17,000 and described by the testator in his will as worthless. Further analysis of the items in the trustees' inventory discloses that the value of the mortgage notes and the bond of the Commonwealth was $8,391. If the "worthless" notes amounting to $17,000 are disregarded for the moment, it appears that out of a total inventory of approximately $43,500, there were securities that would seem clearly to be interest bearing valued at only $8,391. If we assume, as we think we may, that the assets turned over to the trustees were a part of the testator's estate at the time of his death, it follows that there was only a little less than one fifth of the estate invested in interest bearing securities. At least, it can be said that the testator did little in his lifetime to put his house in order as to interest bearing securities.

Too much reliance cannot be placed upon the alleged statement of the testator to his daughter. It does not appear just when it was made. It does appear, however, that the stock of the railroad referred to was a very substantial asset of his estate, and it also appears as a fact that, although the value of this stock has depreciated as of December 31, 1939, the end of the accounting period, nevertheless it was then paying dividends. This evidence of what the testator may have said cannot be received to contradict or control the language of the will or to show that he intended something different from what is expressed therein. *Kingman* v. *New Bedford Home for Aged*, 237 Mass. 323, 326, 327, and cases cited. *Saucier* v. *Saucier*, 256 Mass. 107, 110, 111. *Calder* v. *Bryant*, 282 Mass. 231, 239. But it has some bearing upon the circumstances surrounding the testator. *Lydon* v. *Campbell*, 204 Mass. 580, 584–585. See *Smith* v. *Livermore*, 298 Mass. 223, 241. It is to be assumed that he did not intend to incorporate inconsistent provisions in his will, and the various provisions are to be so construed, if they reasonably can be, consistently with his intention, so as to avoid repugnancy. It appears from the will that the testator was himself a trustee and agent, and he provides that the settlement of his own estate is to be deferred until his duty to his clients and

cestuis que trust is "thoroughly and faithfully" fulfilled. The fact that the assets held by him as such trustee consisted exclusively of common and preferred shares of stock and notes secured by mortgages is not material. Nothing is disclosed as to the terms of the trust or trusts, but the fact that he was a trustee is a circumstance in the case.

The language of clause Seventh of the will, by which the executrix or executor "in distributing or transferring any devise or bequest, or any fund or portion of the Trust estates finally to any party entitled hereunder . . . may do so by transferring such stock or other securities . . . as they shall deem in kind and amount will make justly the portion intended," may refer to the duty of the executrix or executor to transfer to the trustees. The will provides for certain bequests, and there is a provision that one half of the household furniture and other articles are to be held by the trustees for the benefit of the testator's daughter, who is one of the appellants, during her life, and the clauses of the will provide for the eventual transfer of the assets of the several trusts by the trustees to the ultimate beneficiaries. On the other hand, it would seem that a distribution or transfer of any fund or portion of the trust estate, "finally to any party entitled hereunder," refers to any persons ultimately entitled to a portion of a trust estate rather than to the trustees, who in the first instance would receive the trust assets. As already appears, the executrix, or, in the alternative, the executor named, were in fact the same persons who were named as trustees. From an examination of the will as a whole, it would seem that the words "such stock or other securities," as used in the clause relating to the duties of the executrix or executor, relate to and include stock or securities that are a part of the trust estates.

Upon a consideration of the will as a whole, we are of opinion that the testator did not intend by the use of the words "interest bearing securities" to exclude "good, safe" shares of stock. It is apparent that he desired investments that would "produce an income." He must have had confidence in the trustees that he named, one of whom was the

president of the railroad of which he had been treasurer for forty years, and the other, one of his daughters, to whom he gave one half of his household furniture and effects and also $3,000 to be expended by her upon charities according to her discretion. She was also named as the beneficiary of the trust of the other half of the residue, and the trustees were directed to pay over this trust fund to her on or after April 1, 1913, free and discharged of all trust if she requested. The broad power that the testator gave to his trustees in the very first clause of his will as to investments, real and personal, and all the facts and circumstances disclosed, lead us to the conclusion that he considered stocks that were "good" and "safe" and that would produce an income to be "interest bearing securities," and that there was no error in the allowance of the several accounts.

Motions for costs and expenses have been presented to this court in behalf of the guardian ad litem and the representatives of the trustees. It is assumed that the representatives of the trustees, in the settlement of their accounts in the Probate Court, may there present for consideration the matter of expenses and costs incurred in this proceeding. The statute provides that a guardian ad litem, appointed in a proceeding of this character, shall be entitled to such reasonable compensation as the court shall allow (G. L. [Ter. Ed.] c. 206, § 24, as inserted by St. 1938, c. 154, § 1), and we are of opinion that his compensation should be determined by the Probate Court.

*Decrees affirmed.*