ARCHIE N. FROST, trustee, *vs.* ELIZABETH M. HUNTER, executrix, & others.

Plymouth.    April 9, 1942. — June 24, 1942.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Devise and Legacy,* What estate.

A clause of a will, that upon the death of the life beneficiary of a trust, the trust fund "shall become the property in equal parts" of two named persons "absolutely and in fee simple" free of trust, "with this proviso only that upon the death of one of them . . . the survivor shall cause" a designated sum "to be paid or secured to the estate of the one deceased and the survivor . . . shall then become the sole absolute owner" of the balance of the fund, did not give a remainder interest in absolute fee in equal parts to the two persons in the event that one of them died before the death of the life beneficiary; in such event a distribution of the trust fund according to the terms of the proviso was not repugnant to the rule that a fee once plainly given by an instrument cannot be cut down by subsequent provisions inconsistent therewith.

PETITION for instructions, filed in the Probate Court for the county of Plymouth on August 17, 1940.

The respondent Elizabeth M. Hunter, executrix, appealed from a decree entered by order of *Stone*, J.

A motion by the petitioner for "costs in these proceedings." was filed in this court.

*A. N. Frost*, stated the case.

*E. A. Cheney*, for Elizabeth M. Hunter, submitted a brief.

*G. M. Palmer*, for Sarah M. Hovenden, administratrix.

DOLAN, J.   This is a petition by the trustee under the will of Richard Ela seeking instructions as to the distribution of the "balance of cash now in his hands" and as to the proper disposition of an "Autograph Book" referred to in the will of the testator.   The evidence is not reported but at the request of the appellant the judge made a report of material facts as provided by G. L. (Ter. Ed.) c. 215, § 11.

The testator, a resident of Wareham, died May 23, 1923. He had been a member of the bar and drew his own will. He had been a part owner in the Standard Turning Works, "a small wood turning business," and "practically all of the estate in the hands of the trustee . . . came from the sale of the assets of . . . [that business] in October, 1924." Thomas W. Hovenden and John W. Hunter were old employees of that concern, the former being employed in its office, the latter in its "shop."   Hovenden died on February 26, 1924, and Hunter on January 26, 1933, both having survived the testator.   "The life tenant Walter Ela died January 25, 1924, and the life tenant Alfred Ela died February 14, 1940."

Under the terms of the testator's will (items 4, 5 and 9) he gave all of his property in trust to Walter Ela, T. W. Hovenden and John W. Hunter, having recited in item 1 that "All mention of Thomas W Hovenden and John W Hunter in this will is dependent on the fact that said person shall be in the employ of the Standard Turning Works at the time of my death and if either said Hovenden or said Hunter are dead or not in said employ this will is to be construed as if the name of that one or of both was not mentioned in any way."   The testator directed (item 9A) that his trustees or trustee carry on the business of the

Standard Turning Works, and that the employment of Hovenden and Hunter be continued at liberal salaries unless the trustees unanimously decided that it was inexpedient to continue the business, and (item 9B) that they pay the net income to Walter Ela and Alfred Ela during their lifetimes, suggesting, but not directing, that if they did "not need the whole of said income for . . . [their] comfortable support . . . [they would] allow the residue to be equally divided between . . . Hovenden and . . . Hunter." The testator further provided (item 9C) that "after the death of said Walter Ela [and Alfred Ela] said trust estate meaning my entire property then existing shall become the property in equal parts of said Hovenden and said Hunter absolutely and in fee simple and free from all trusts of every kind or nature with this proviso only that upon the death of one of them if no other arrangement has been completed between them, the survivor shall cause the sum of fifteen thousand . . . dollars to be paid or secured to the estate of the one deceased and the survivor of said Hovenden or Hunter shall then become the sole absolute owner of the whole of my estate then existing." Item 11 of the testator's will provides, so far as pertinent, as follows: "Desiring to dispose of all I have or shall hereafter be entitled to and that there shall be no intestate property but that everything shall be finally disposed of by this will if my estate in full subject to Walter Ela's [and Alfred Ela's] life . . . [interests] does not pass to T W Hovenden and John W Hunter or either of them I give said entire estate subject to said life . . . [interests] of Walter Ela [and Alfred Ela] to the Treasurer of Harvard College for the unrestricted uses of said Harvard College . . . ."

The provisions of the will quoted above have been adapted to certain modifications directed to be made by the testator in a codicil, which, together with the will, was allowed as his last will and testament. The effect of these modifications was to include Alfred Ela as a life beneficiary on equal terms with Walter Ela, and to fix the time for the taking effect of item 9C as of the death of the survivor of them, instead of as of the time of the death of Walter. Item 11

was also modified to make its provisions subject also to "Alfred Ela's" life interest. Since no question is raised concerning the disposition of the autograph book decreed by the judge, it is unnecessary to set forth the terms of the will relating thereto.

The judge entered a decree in which he found that Hovenden and Hunter "made no arrangement within the terms of the proviso contained in Item 9C of the will," and that "no payment of fifteen thousand . . . dollars or any other sum was made or secured by . . . Hunter or his estate to . . . Hovenden or his estate within the terms of the proviso contained in said Item 9C of the said will," and instructed the trustee to distribute the balance of the assets in his hands as follows: "1. To pay the estate of Alfred Ela, the deceased life tenant the accrued income of the fund not theretofore paid apportioned as of February 14, 1940, the date of his death. 2. To pay to himself . . . $300 for his services in preparing and prosecuting the petition and the further sum of . . . $200 for his future services in making distribution, final accounting and termination of the estate." (Items 3, 4 and 5 provide for allowances for costs and expenses to counsel for the respondents.) "6. Subject to such rights as the Commonwealth of Massachusetts may have, to pay to said Sarah M. Hovenden, administratrix of the estate of Thomas W. Hovenden the sum of . . . $15,000 together with the accrued income upon said sum apportioned as of February 14, 1940, the date of the death of the life tenant to date of distribution. 7. Subject to such rights as the Commonwealth of Massachusetts may have to pay the balance in his hands to Elizabeth M. Hunter, executrix of the will of John W. Hunter. 8. The Court further finds that the estate of Richard Ela is the owner of one half interest in the manuscript book so called mentioned in Article VIII–2 of the petition and that it is part of the balance of the said estate and said one half ownership is to be transferred to said Elizabeth M. Hunter, executrix of the will of John W. Hunter subject to such rights as the Commonwealth of Massachusetts may have. The petitioner is instructed to deliver custody of the

entire book to the Harvard Trust Company, Trustee of the estate of Walter Ela subject to such disposal as may be agreed upon by it and by the estate of John W. Hunter." The executrix of the will of Hunter appealed, and now contends that under the terms of the will of the testator her testate and Hovenden were given a fee which could not be cut down by any subsequent provisions of the will.

The familiar, fundamental rule for the construction of wills is to ascertain the intent of the testator from the whole instrument, attributing due weight to all its language, considered in the light of the circumstances known to the testator at the time of execution, and to give effect to that intent unless some positive rule of law forbids. *Ware* v. *Minot*, 202 Mass. 512, 516. *Fitts* v. *Powell*, 307 Mass. 449, 454. *Mills* v. *Blakelin*, 307 Mass. 542, 544, and cases cited.

It is also settled that where an estate in fee is given in plain and unequivocal language it cannot be cut down by subsequent provisions repugnant to or inconsistent with the estate first given. *Mills* v. *Blakelin*, 307 Mass. 542, 546, and cases cited. This is not a rule of construction but is a positive rule of law the observance of which has been said to be "indispensable to the required certainty and security in establishing titles to property and especially in the disposition of landed estates . . . [and that it] is a safer rule than one which for want of strictness would be attended in its application with all sorts and shades of doubt and uncertainty." *Bradley* v. *Warren*, 104 Maine, 423, 427. In the case just cited the court relied largely on *Kelley* v. *Meins*, 135 Mass. 231, *Damrell* v. *Hartt*, 137 Mass. 218, *Joslin* v. *Rhoades*, 150 Mass. 301, *Foster* v. *Smith*, 156 Mass. 379, and *Knight* v. *Knight*, 162 Mass. 460.

Nevertheless, the question whether or not an absolute and unrestricted ownership in property is given by the will is itself one of construction and governed by the fundamental rule to which we have already referred. If upon the application of that rule it appears that under the language of the will such an estate was given, of course that is controlling, and any limitation over afterwards is void.

See *O'Reilly* v. *Irving*, 284 Mass. 522, 523, 524. *Mills* v. *Blakelin*, 307 Mass. 542, 546.

In the instant case the provision of item 9C that, upon the death of the survivor of the life beneficiaries, the trust estate shall become "the property in equal parts of said Hovenden and said Hunter absolutely and in fee simple and free from all trusts of every kind and nature" is immediately coupled, without pause, with the words: "with this proviso only that upon the death of one of them if no other arrangement has been completed between them, the survivor shall cause the sum of fifteen thousand . . . dollars to be paid or secured to the estate of the one deceased and the survivor of said Hovenden or Hunter shall then become the sole absolute owner of the whole of my estate then existing." These provisions, contained in one sentence, are complete in themselves, are not separable, and must be read as a whole. Compare *O'Reilly* v. *Irving*, 284 Mass. 522. Thus considered we think that the intention of the testator manifested by the language used by him is clear. The gift in equal parts to Hovenden and Hunter "in fee" cannot be said rightly to have been absolute. It was, on the contrary, subject to a clearly defined proviso, denominated as such, and upon which the operation of the provisions for Hovenden and Hunter was to depend in certain events, which have happened. The true office of a proviso and its general purpose are "to restrict the sense or make clear the meaning of that which has gone before." *Sears* v. *Childs*, 309 Mass. 337, 346, and cases cited.

Thus considered we think the testator intended that, upon the death of the survivor of the life beneficiaries, Hovenden and Hunter were to share the trust estate equally, but that, if one died before the termination of the trust, the survivor, if no other arrangement had been made between them, should cause either to be paid or to be secured to the estate of the one deceased the sum of $15,000, and that the survivor should then become the absolute owner of the whole of the estate then existing, that is, that which would remain after fulfilment of the condition for payment or securing to the estate of the one deceased the sum fixed.

We have examined the cases relied upon by the appellant as well as many others in which provisions of wills cutting down fees once given have been considered. See *Ide* v. *Ide*, 5 Mass. 500; *Kelley* v. *Meins*, 135 Mass. 231; *Damrell* v. *Hartt*, 137 Mass. 218; *Foster* v. *Smith*, 156 Mass. 379; *Galligan* v. *McDonald*, 200 Mass. 299; *Mills* v. *Blakelin*, 307 Mass. 542, 546, and cases cited. In none of them do we find any support for the proposition that language purporting to give a fee coupled, as here, in the same sentence with a definite proviso for other disposition in a certain event offends the general rule of law relied upon by the appellant; and we are of opinion that an unqualified estate in fee was not given to Hovenden and Hunter in plain and unequivocal language, but that the provisions for them in the one sentence of item 9C of the will read as a whole were limited by the terms of the express proviso contained in that sentence.

It follows from what we have said that the decree entered by the judge as to the main subject matter was correct. Costs and expenses of this appeal may be allowed to the respondents or their counsel in the discretion of the Probate Court.

The motion of the petitioner for "costs of these proceedings" is not allowed. It appears that, in the decree entered by the judge, he made an allowance to the petitioner for his services "in preparing and prosecuting the petition and . . . [a further allowance] for his future services in making distribution, final accounting and termination of the estate." The proper place for such charges is upon further accounting by the trustee in the Probate Court. *Loring* v. *Wise*, 226 Mass. 231, 233, 234. *Poor* v. *Hodge*, 311 Mass. 312, 319. However, since no objection has been taken to those allowances, we do not disturb them.

*Decree affirmed.*