Mary Gorski *vs.* New York Life Insurance Company.

Franklin.    October 6, 1943. — November 29, 1943.

Present: Field, C.J., Lummus, Cox, & Ronan, JJ.

*Insurance,* Coverage; Accident insurance; Life insurance: double indemnity. *Pleading, Civil,* Declaration. *Evidence,* Presumptions and burden of proof.

To recover under a policy of insurance providing on its first page for double indemnity if the death of the insured resulted "from accidental means as defined in and subject to the provisions set forth under 'Double Indemnity,'" which provisions were set forth on the second page and provided in a single sentence for the payment of double indemnity upon proof of death resulting from accidental bodily injury as there defined, "provided, however, that such double indemnity . . . shall not be payable if the insured's death resulted, directly or indirectly, from" nine enumerated causes, the beneficiary, among other things, must allege and prove that the insured's death was not the result of any of such nine causes.

CONTRACT. Writ in the Superior Court dated April 15, 1943.

The case was heard by *Hammond,* J., on demurrer to the declaration.

*E. L. O'Brien,* for the plaintiff, submitted a brief.

*S. B. Milton,* for the defendant.

RONAN, J. The plaintiff, the beneficiary named in two policies of insurance issued by the defendant upon the life of her husband, seeks to recover the amount named as double indemnity in each policy. The policies except as to amounts were identical in form. Each provided for the payment of a certain amount upon receipt of due proof of the death of the insured and twice that amount "if such death resulted . . . from accidental means as defined in and subject to the provisions set forth under 'Double Indemnity.'" The next page of the policy contained the following provision: "The Double Indemnity Benefit specified on the first page hereof shall be payable upon receipt of due proof, on forms prescribed by the Company, that the death of the Insured re-

sulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means and occurred within ninety days after such injury . . . provided, however, that such Double Indemnity Benefit shall not be payable if the Insured's death resulted, directly or indirectly, from (a) self-destruction, whether sane or insane," or eight other specifically enumerated causes.

Each count of the declaration was based upon one of these policies and set forth the abstracts from the policies which have just been quoted, but neither count alleged that the death of the insured was not due to any of the specific causes mentioned in the proviso clause to which we have already referred. At a hearing upon a demurrer, the judge ruled in effect that the declaration was defective on account of the failure to allege that the death of the insured did not result from any of the causes included in the proviso clause and ordered the demurrer sustained. He then reported his ruling to this court.

The only question presented is whether the declaration sets forth a good cause of action upon the double indemnity provisions of these policies without negativing suicide and the other causes included in the proviso clause as the cause of the death of the insured.

The defendant agreed in the insuring clause on the first page of each policy to pay twice the face of the policy if death resulted from accidental means as defined in and subject to the provisions contained in that part of the policy which dealt with the double indemnity. Nothing more appeared upon the first page of the policy with reference to double indemnity. This provision did not impose any general or absolute obligation to pay double indemnity in every instance where the death of the insured resulted either immediately or remotely from accident. The scope of the company's liability to pay for an accidental death was not fixed by this provision. It did not agree to pay double indemnity for a death arising from any kind of an accident. It agreed to pay only when death was caused by accidental means as defined in the double indemnity clause. The provision appearing upon the first page of the policy designated the amount the

defendant would pay, but it did not purport to establish therein the specific risk that the defendant assumed. The defendant did not undertake to cover all risks of accidental death, and then by a subsequent provision carve out of this coverage risks arising from certain causes. Here the coverage could not be ascertained without considering the double indemnity provision, which in fact is the only place in the policy where the extent and nature of the risk covered by the policy are stated and defined. The liability of the company is limited to a death resulting directly and independently of all other causes "from bodily injury effected solely through external, violent and accidental means . . . provided, however," that such indemnity shall not be payable if "death resulted, directly or indirectly," from suicide and other expressly enumerated causes. These particular causes are in terms excluded from the coverage of the risks. They were never included in that coverage, and it never applied to a death that might be caused by any of them. They never came within the scope of the defendant's liability. They are a part of the same sentence which completely and accurately defined the risks that were included in and those that were outside the double indemnity coverage. That sentence must be read in its entirety. It dealt with only a single subject. It drew the line separating risks that were within from those that were outside the field covered by the policy. The language and the structure of the sentence show that the risks that were enumerated and designated to be beyond the scope of the policy were exceptions to the coverage defined by the first part of the sentence. There was no error in ruling in effect that, because of the failure to allege that the death of the insured did not result from a cause not covered by the policy, neither count in the declaration set forth a good cause of action. *Sohier* v. *Norwich Fire Ins. Co.* 11 Allen, 336. *Leland* v. *United Commercial Travelers of America*, 233 Mass. 558. *Lunt* v. *Aetna Life Ins. Co.* 253 Mass. 610. *Brown* v. *Boston Casualty Co.* 295 Mass. 298. *Sullivan* v. *Ward*, 304 Mass. 614. This is in accord with the general rule of construction which applies to written instruments and statutes and is not confined to contracts of insurance. *Williams* v.

*Hingham & Quincy Bridge & Turnpike Corp.* 4 Pick. 341. *Smith* v. *Hill,* 232 Mass. 188. *Commonwealth* v. *Lee,* 247 Mass. 107. *Ansell* v. *Boston,* 254 Mass. 208. *Commonwealth* v. *Sokorelis,* 254 Mass. 454. *Garvey* v. *Wesson,* 258 Mass. 48. *Bramley* v. *White,* 281 Mass. 343. *O'Reilly* v. *Irving,* 284 Mass. 522. *Frost* v. *Hunter,* 312 Mass. 16.

The instant case is distinguishable from *Murray* v. *Continental Ins. Co.* 313 Mass. 557, 560, and cases cited therein, upon which the plaintiff relies. In the *Murray* case the risk assumed by the company was stated in the general insuring clause to be "against all direct loss and damage by 'sprinkler leakage,' except as herein provided." The company there undertook in general terms to indemnify the insured against all loss and damage due to leakage from the sprinkler system, and the burden of proving that the damage arose from a cause that was excepted from this general coverage by a subsequent clause in the policy was held to be upon the company. Here, as already pointed out, the limitations of the risk were settled by a single sentence which separated the causes of death that were within from those that were without the policy.

*Order sustaining demurrer affirmed.*