**ALAMO CAS. CO. v. RICHARDSON.**

No. 4663.

Court of Civil Appeals of Texas.
Beaumont.

Sept. 14, 1950.

Rehearing Denied Jan. 10, 1951.

Cecil, Keith & Mehaffy, Beaumont, for appellant.

Shelby K. Long, Beaumont, for appellee.

WALKER, Justice.

Appellee was the Plaintiff, and Appellant, the Defendant, in the trial court.

Plaintiff is a dealer in automobiles, and has his place of business in Beaumont. He purchased 6 automobiles in Ft. Worth for resale in Beaumont, and engaged one Gardener to bring two of these vehicles to Beaumont. This Gardener attempted to do. He fastened one vehicle to the rear of the other and then drove the front vehicle, towing the one behind, from Ft. Worth over the road toward Beaumont; but at a point on this road, the two vehicles turned over (the cause of the upset was not proved) and were badly damaged as a result.

Plaintiff claimed reimbursement under an insurance policy issued to him by Defendant, and on Defendant's refusal to pay his claim, brought this action upon this policy to recover the damages sustained by the two vehicles. Neither party prayed for equitable relief.

The cause was tried to the court, sitting without a jury, and the trial court rendered judgment in Plaintiff's behalf against Defendant for the sum of $1510.07. From this judgment Defendant has appealed.

Defendant has assigned 5 Points of Error for Reversal. Under 1, 2 & 3, Defendant says that the policy did not insure Plaintiff against the loss proved; and under the remaining Points, says that the evidence does not show when the loss occurred, and thus fails to show that it occurred during the term of the policy. We sustain the argument under Points 2 and 3, and thus pretermit discussion of the other Points.

The contract of insurance was wholly written upon printed forms which contained blank spaces to be filled when the contract was made. Three endorsements were included in the Policy. Paragraph 4 of one, which we shall style Form 10, contained blank spaces for listing various locations to which the contract of insurance applied, and for stating Defendant's maximum total liability for any one casualty at these places, and it also contained blank spaces for stating Defendant's maximum total liability for any one casualty to automobiles "being driven over road to point of destination selected by the insured as the place of storage of such automobiles." In the space provided for stating the limit of liability on automobiles being driven over road Defendant's agent wrote the word "Nil", and out of this word has come this action. Defendant argues that it refers to the *existence* of insurance and means that Defendant excluded from the insurance any liability for damage to automobiles moved over road. Plaintiff argues that it refers only to the Defendant's *limit of liability,* and means that no limitation was imposed upon liability for damage to automobiles being moved over road. Which of these two constructions shall be applied is the question to be decided. The following provisions of the policy are relevant to this question.

At the beginning of the policy appear certain declarations which identify plaintiff as the insured, state his address, state his occupation ("Auto Dealer"), recite that the vehicles insured will be "principally garaged" in the town where plaintiff resides, and fix the term of the policy as the period from 12:01 A. M., September 2, 1947, to 12:01 A. M., September 2, 1948. Item 5 of these Declarations recites that the vehicles insured are to be "Held by Dealer".

Plaintiff's judgment is founded upon the endorsement we have styled Form 10.

It is recited at the beginning of Form 10 that it is "applicable only to such of the coverages of Fire, Theft, Collision, Windstorm and Combined Additional Coverage as are *defined in the policy* and *for which insurance is provided."*

For the coverages for which *insurance is provided,* one turns from Form 10 to Item 3 of the Declarations, where it is identified as follows: "The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or

charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| COVERAGES | LIMITS OF LIABILITY | NET RATE | PREMIUM |
|---|---|---|---|
| E-1 Collision or Upset | Actual cash value less $50.00 deductible | Deposit | $50.00 |
| C Fire, Lightning & Trans portation | $10,000.00 | Deposit | $50.00 |
| D-1 Theft (Broad Form) | $10,000.00 | Deposit | $50.00 |
| Special Charge for False Pretext as per endorsement attached | | Deposit | $25.00 |

Total Premium $175.00

All of these coverages except False Pretext are defined in the main body of the policy, thus coming within the quoted terms of Form 10, and False Pretext is defined in one of the endorsements to the policy so as to show that this risk is an extension of Coverage D-1, which is Theft (Broad Form). The coverages other than False Pretext which are listed above, namely, E-1, C and D-1 are defined in that part of the policy entitled Insuring Agreements, and of these, E-1 and C are defined as follows:

"Alamo Casualty Company (herein called the Company) agrees with the Insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusion, conditions and other terms of this policy: * * *

"Coverage E-1—Collision or Upset.

To pay for loss of or damage to the automobile, hereinafter called loss, caused by collision of the automobile with another object or by upset of the automobile, but only for the amount of each such loss in excess of the deductible amount, if any, stated in the declarations as applicable hereto.—

"Coverage C—Fire, Lightning and Transportation.

"To pay for loss of or damage to the automobile, hereinafter called loss, caused (a) by fire or lightning, (b) by smoke or smudge due to a sudden unusual and faulty operation of any fixed heating equipment serving the premises in which the automobile is located, or (c) by the stranding, sinking, burning, collision or derailment of any conveyance in or upon which the automobile is being transported on land or on water."

Limitation upon Defendant's liability under these coverages was fixed not only in Item 3 of the Declarations, copied above but also in conditions 14 and 15 of the policy and in Sections 8 and 9 of Form 10. However, these other limitation provisions need not be quoted.

The automobiles insured under the policy are described in Form 10. Reference to the vehicles insured was also made in Item 4 of the Declarations, entitled "Description of the automobile and facts respecting its purchase by the named Insured" but this only directs the readers attention to Form 10. In Item 4 Defendant's agent wrote the words: "Forms #155–10–12 attached." These numerals refer to the endorsements included in the policy and the endorsement we have styled Form 10 is referred to by the numeral *10*. Form 10 is entitled AUTOMOBILE DEALERS MONTHLY REPORTING FORM, and it describes the insured vehicles in its first paragraph which provides in part:

"1. Coverage—This policy covers automobiles owned by the insured and held for sale * * *".

It is of some significance that the number of automobiles insured was not stated, and that no limitation was placed upon the number of automobiles insured.

Following this identification of the vehicles insured Form 10 provides for certain exclusions from the agreed coverages, but these exclusions are not the only limitation upon the insurance coverages. Provision for still further qualification of the various coverages agreed upon was next made in paragraphs 3 and 4 of Form 10 which contained blank spaces in which to list *locations* to which the insurance applied and which also contained blank spaces in which to state Defendant's maximum total liability from any one casualty at these places and from any one casualty to automobiles occurring in any one or more of 5 specific situations or places grouped under the subtitle Elsewhere. The manner in which one of these spaces was filled has resulted in this action, as we have already stated, and we therefore quote these two paragraphs, in the form in which they appear in the policy, as follows:

"3. Named Locations—The specific locations named in the schedule of locations and limits of liability hereinafter stated are all the locations or spaces within locations, owned rented or controlled, wholly or in part, by the insured and used by the insured as places of storage of automobiles at the date of inception of this policy or to be used by the insured as such during the term of this policy. No liability shall attach hereunder at any location or space within location owned, rented or controlled, wholly or in part by the insured and used by the insured as a place of storage of automobiles, except for a period of forty-eight hours after commencement of such use, unless such location or space within location has been reported to this company and endorsed hereon.

"4. Schedule of locations and limits of Liability Thereat—The following is the schedule of named locations referred to in the preceding paragraph and the limits of this company's liability for loss or damage from any one casualty at each; also the limits of this company's liability for loss or damage from any one casualty *elsewhere:*

| Limit of Liability | Named Location | Rate |
|---|---|---|
| $10,000.00 | At Corner College and $...... 4th Streets, Beaumont, Texas | |

(This named location, incidentally, is described in the declarations as Plaintiff's address)

### Elsewhere
Limit of Liability

$ Nil For a period of forty-eight hours only at any unnamed location or space within location owned, rented or controlled, wholly or in part, by the insured and used by the insured as a place of storage of automobiles, such period to begin with the commencement of the use of such location by the insured;

$ Nil At any automobile show, fair or other public exhibition;

$ Nil On automobiles in transit by railroad car or other conveyance, except as limited by paragraph 2, "Exclusions";

$ Nil On automobiles being driven over road to point of destination selected by the insured as the place of storage of such automobiles;

$ Nil At any other location or space within location which is not owned, rented or controlled, wholly or in part, by the insured and used by the insured as a place of storage of automobiles."

Defendant charged four premiums for the insurance coverages, and these premiums are listed in Item 3 of the Declarations, which we have quoted above.

### Opinion

 We sustain Points 2 and 3 and hold, on the following grounds, that the policy did not insure Plaintiff against the loss he sustained:

(A) The test of the constructions proposed by the parties is the intention expressed in the policy, and the only evidence of this intention now before us is the language of the policy. The parties did not

pray for equitable relief, and they did not attempt to prove that language in the policy had a meaning different from the meaning which would ordinarily be attributed to it. Therefore, in determining what the disputed provision of Form 10 means, we shall be guided by the common or normal meaning of the words used in this provision, except as this may be qualified by the context and subject matter of the policy. We must, of course, read the policy as a whole, and construe every part of it with reference to the whole. Williston on Contracts, Section 618.

(B) The disputed provision of Form 10 has been quoted above but we repeat it for convenience. It reads:

"Limit of Liability

"$ Nil On automobiles being driven over road to point of destination selected by the insured as the place of storage of such automobiles."

According to Webster's Unabridged Dictionary, 2nd Edition, "Nil" is a contraction of "Nihil", and "Nihil" means "nothing". We adopt this as the common or normal meaning of "Nil."

Thus "nothing" may be written for "nil", and if this is done the disputed provision would read:

"Limit of Liability

"$ Nothing On automobiles being driven over road—".

(C) Now "nothing" does not aptly fit with "limit of liability". The use of "none" instead of "nothing" would seem more likely had the parties desired to state that no limit of liability was being fixed. However, "nothing" does aptly fit immediately before "on automobiles being driven over road", and if read with those words (as it ought to be, since the combination makes a complete sentence) suggests at once that "no insurance" on those automobiles was meant.

(D) There is support for this view elsewhere in the policy and we accordingly take this to be the prima facie meaning of the disputed provision, that is, that "nil" means "no insurance" instead of "no limit

on liability". The confirmation afforded by other parts of the policy is the following:

A. In the same numbered section of Form 10 which contains the disputed provision, the parties fixed a maximum total liability of $10,000 for any one casualty at a named location within plaintiff's control. This was the only fixed location named in the policy, and it was described elsewhere as plaintiff's address; so that we assume it to be plaintiff's place of business. If "nil" means "no limit of liability" instead of "no insurance", then immediately after the parties fixed that $10,000 limit for one casualty at a place which plaintiff *controlled,* they agreed that defendant's liability would be unlimited for a casualty occurring in these five situations or places: (1) for 48 hours at any *unnamed* location within plaintiff's control, commencing with plaintiff's use of this location; (2) at any automobile show, fair or other public exhibition; (3) on automobiles in transit by railroad car or other conveyance, (except as limited by paragraph 2 of "Exclusions" which need not be considered here); (4) on automobiles being driven over road to storage point selected by plaintiff (this is the disputed provision); and (5) at any other location used by plaintiff as a storage place for automobiles but *not* owned, rented or controlled by plaintiff, in whole or in part.

A casual reading of the description of the 5 situations or places just listed shows the risk of loss attending them must necessarily be much greater than the risk of loss at plaintiff's address, which, according to the policy, was a place not only within plaintiff's control but was also a place *known* to the insurer. It must also be borne in mind that the number of automobiles insured was unlimited. Nevertheless, under plaintiff's construction of "nil" as meaning "no limit on liability", the parties would have carefully put a limit on the less hazardous risk and just as carefully taken it off the more hazardous risks. Such a thing could have been done, but why? No reason whatever appears; and the improbability of such a purely arbitrary agreement having

been made is a strong argument in support of our interpretation of "nil" as meaning "no insurance".

b. Plaintiff's construction of "nil" as "no limit on liability" would create conflicts between the disputed provision and three separate provisions of the Declarations. Thus, in Item 3 of the Declarations, it is provided with respect to Coverage E-1, which is the coverage on which plaintiff's judgment is based, that Defendant's "Limits of Liability" under this coverage shall be "Actual Cash Value *less $50.00 deductible*". If "nil" means "no limit on liability", it is in conflict at least with the provision for deducting $50.00 from the amount of the loss. Further, Item 3 fixes $10,000 as Defendant's "Limits of Liability" under Coverages C and D-1, respectively; and since these coverages, under Plaintiff's construction of "nil", would apply to the situation described in the disputed provision just as well as would Coverage E-1, Plaintiff's construction of "nil" would make a conflict between "no limit of liability" in the disputed provision and the $10,000 limit put upon those coverages in Item 3 of the Declarations. But if "nil" is interpreted as meaning "no insurance," none of these three conflicts would exist.

The judgment of the trial court is reversed and judgment is rendered that Plaintiff take nothing against Defendant.

## On Petition for Rehearing

■■ We adhere to our conclusion that plaintiff's suit depends upon Form 10. This endorsement, or rider, is not merely a provision for determining how many automobiles are insured from time to time. It is the very basis of the contract, contains provisions which constitute integral parts of defendant's promise to plaintiff, imports into the contract provisions which appear in the policy apart from the three endorsements, and is controlling insofar as it conflicts with those parts of the contract apart from the three endorsements. See: National Mutual Benefit Association v. Aaron, Tex.Com.App., 67 S.W.2d 855; Drane v. Jefferson Standard Life Ins. Co.,

139 Tex. 101, 161 S.W.2d 1057 at page 1062; 32 C.J. 1159 (Sec. 270); 44 C.J.S., Insurance, § 300, P. 1205; 29 Am.Jur., 194 (Sec. 175). The five paragraphs of Form 10 listed under the heading "Elsewhere" are not "exceptions" within the meaning of Rule 94, Texas Rules of Civil Procedure, to the coverages listed in Item 3 of the Declarations, but are, as we construe them, elements of the statement of defendant's basic promise to plaintiff, as distinguished from exclusions subsequently made from a broader promise. We construe the coverages in Item 3 of the Declarations as being referable to the specific hazards listed in Form 10 instead of said hazards being exceptions to those coverages. The question is one of construction and the nature of the problem is indicated in Gorski v. New York Life Ins. Co., 315 Mass. 17, 51 N.E.2d 761 and Anthony v. Mercantile Mutual Accident Ass'n, 162 Mass. 354, 38 N.E. 973, 26 L.R.A. 406. It may be true that our construction limits Coverage E-1 (Collision or Upset) to the only location which is specified in Form 10; but such a contract may very well be a reasonable one. We cannot say as a matter of law that the parties would not have made such a contract. We agree with plaintiff that a contract of insurance is to be construed in favor of the insured, but this rule of construction cannot come into operation unless the contract is fairly susceptible of different interpretations, one of which is favorable to the insured; and under the facts before us the rule to be applied is not this, but, instead, is that which requires the contract to be read and construed as a whole and given a construction which brings its several parts into harmony. We do not regard our construction of the contract as one which works a forfeiture against the insured.

Some changes have been made in the original opinion. As changed, the opinion now on file and this opinion written on motion for rehearing, constitutes the opinion of the court adjudicating this appeal.

Plaintiff's motion for rehearing is overruled.