LOUIS SCHENA & another[1] vs. EMELIE M. PAGLIUCA.[2]

Middlesex.  February 21, 1980. — March 24, 1980.

Present: GREANEY, PERRETTA, & KASS, JJ.

*Devise and Legacy,* Interest conveyed, Real estate.  *Will,* Construction.

Under the terms of a will which devised an undivided one-half interest in
real estate to the testatrix's son to be held in common with the devisees
of the remaining one-half interest, the testatrix's daughter and son-in-
law, with the condition that if either devisee moved from the premises,
that devisee's one-half share must be offered to the remaining occu-
pant at a specified price, the death of the son did not render the condi-
tion operative, and, therefore, the son's wife, having taken by intestate
succession from her husband, was not required to sell her interest in
the real estate to the other devisees.  [451-453]

CIVIL ACTION commenced in the Probate Court for the
county of Middlesex on October 5, 1977.

Motions for summary judgment were heard by *Sulli-
van,* J.

*Jonathan P. Sauer (Vincent Galvin* with him) for the
defendant.

*Walter C. Spiegel* for the plaintiffs.

GREANEY, J.  Julia Pagliuca died in 1971.  Her will, ex-
ecuted on November 9, 1964, left specific monetary be-
quests to five of her children and divided the residue of the
estate among her children living at her death.  The material
portions of the will's third clause in controversy here dis-
posed of certain real estate in this manner:

[1] Lucy Schena.

[2] The action was brought against the defendant individually and as ad-
ministratrix of the estate of Pasquale Pagliuca.

"*THIRD*: I give, devise, and bequeath an undivided one-half share of the real property located at 95-97 Dartmouth Street, Medford, to my son, Pasquale Pagliuca to be held in common, and the remaining undivided one-half share, I bequeath to Lucy Schena, and Louis Schena, Husband and Wife, said share to be held by them as Tenants by the Entirety. These bequests, however, are made with the following conditions:

". . . .

"2. Each shall acquire title to this real property under the agreement that if either decides to and does move from the premises, that undivided one-half share owned by him or them must be offered to the remaining occupant for the specific price of Eight Thousand . . . ($8,000.00) . . . Dollars; Two Thousand . . . ($2,000.00) . . . Dollars of which is to be paid on the date that a deed is given, and Two Thousand . . . ($2,000.00) . . . Dollars shall be paid on the same date for three (3) succeeding years without interest. If this condition becomes operative and a party or parties thereto dies, any balance due shall be paid by his or their heirs or assigns."

The Schenas, the testatrix's daughter and son-in-law, have lived at the Dartmouth Street premises since 1937. Pasquale and his wife Emelie, the defendant, moved into the property on September 29, 1966, about two years after the will was executed. Pasquale continued to reside at the premises until he died intestate on March 7, 1976, leaving Emelie as his only heir at law. Following Pasquale's death, the plaintiffs offered, and the defendant rejected, $8,000 for her interest in the real estate. The Schenas then sought a declaration in a Probate Court (G. L. c. 231A, §§ 1, 2), that under the third clause of Julia's will, Emelie was required to sell her interest to them for $8,000. Emelie counter-

claimed, seeking a declaration that she owned an undivided and unrestricted one-half interest in the real estate in common with the Schenas, and requesting partition.

On cross motions for summary judgment (Mass.R.Civ.P. 56[a], [b], 365 Mass. 824 [1974]), a probate judge examined the will and a statement of agreed facts (the essentials of which are summarized above) and declared that it was Julia Pagliuca's intent by the will "to vest unqualified ownership in fee to the real estate . . . to either the plaintiffs or the deceased Pasquale Pagliuca, whichever party remained after the other no longer occupied the premises for whatever reason, upon payment of . . . $8,000 to that party not in occupancy, or his estate." Judgment entered ordering Emelie to convey her interest to the Schenas upon their payment of the stipulated price. Our job is to construe the will as written, and we cannot judicially reconstruct it in order to impose additional conditions or limitations not clearly found in the language of the will itself. *Mackey* v. *Bowen*, 332 Mass. 167, 170 (1955). *Sullivan* v. *Roman Catholic Archbishop*, 368 Mass. 253, 258 (1975). In our view the particular contingency contemplated by the third clause, namely that one of the cotenants in his or their lifetime might decide to move, and in fact did move, has not occurred. Accordingly, the judgment must be reversed.

The language of the third clause indicates that the testatrix was concerned about Pasquale's and the Schenas' moving from the premises, as the word "moving" is commonly understood, and that she did not consider or provide for cessation of occupancy as a result of death. There is little doubt that the devise passed fee simple interests to the named parties, with Pasquale (but not Emelie) receiving an undivided one-half share as a tenant in common with the Schenas, who in turn held their undivided one-half interest in the property as tenants by the entirety. The grant of fee simple interests is presumed by the rule that a devise conveys all the estate which the testatrix could lawfully transfer in the land mentioned, unless it clearly appears by the will that she intended to convey a smaller interest. G. L. c. 191,

§ 18. *Joslin* v. *Rhoades*, 150 Mass. 301, 303 (1889). *Daly* v. *Toohy*, 280 Mass. 51, 53 (1932). *Mills* v. *Blakelin*, 307 Mass. 542, 544-545 (1940). There is nothing in the language of the devise (assuming that it could be done validly) to show that the testatrix created life estates, determinable fee interests, or provisions for forfeiture, which established rights of survivorship, remainder interests, or even a condition of sale as between the cotenants, should Pasquale or both of the plaintiffs *die* while still in residence. See *Gordon* v. *Gordon*, 332 Mass. 197, 203, cert. denied, 349 U.S. 947 (1955); *Bowen* v. *Campbell*, 344 Mass. 24, 26 (1962). See also 6 American Law of Property §§ 26.64, 26.65 (Casner ed. 1952). The last sentence of the second numbered paragraph supports this conclusion by binding the heirs and assigns of the three named devisees only to pay the balance of the purchase price upon the condition becoming effective. If the condition itself was to be imposed on the estates of the parties, or the absolute nature of the devise cut down by the death of the parties, suitable language could have been inserted in this sentence to accomplish that result. We conclude that fee simple interests were devised, and that the condition placed on those interests, if valid at all, has not happened.

Based on our analysis of the clause, we must reject the Schenas' contention that the will evinces an intent that the property must always remain with the parties named in the third clause. While intent is the lodestar of testamentary construction, it cannot be used to displace what a will has said. Likewise, it cannot be used to supply a missing clause or to permit speculation as to what the testatrix might have intended had she foreseen or contemplated events as they actually turned out, but for which she had made no provision. *Anderson* v. *Bean*, 220 Mass. 360, 363 (1915). *Loring* v. *Dexter*, 256 Mass. 273, 278 (1926). *Boston Safe Deposit & Trust Co.* v. *Schmitt*, 349 Mass. 669, 671-673 (1965). *Wright* v. *Benttinen*, 352 Mass. 495, 497-498 (1967). 4 Bowe & Parker, Page on Wills § 30.7, and Massachusetts cases cited in n.8, at 41-42 (1961). The plaintiffs have not pointed to

anything convincing in the agreed facts or in the will which supports the construction they place on the clause. Their argument that a partition might result from the present state of affairs cannot serve to supply what is missing in the will (see *Roberts* v. *Jones,* 307 Mass. 504, 506-508 [1940]), and the only case cited in support of their position — *Frost* v. *Hunter,* 312 Mass. 16 (1942) — is not helpful to it.[3] We can only conjecture as to what Julia might have done had she foreseen Pasquale's death while he resided at the premises. This fact separates this case from those where the testator's intent is readily discoverable in the will's language, with any inartful expression amenable to judicial relief, as well as from those cases where what happened was fairly within the contingency defined by the will, with the court able to remedy the shortcomings by a process of construction. See generally *Boston Safe Deposit & Trust Co.* v. *Coffin,* 152 Mass. 95 (1890), *Renwick* v. *Macomber,* 225 Mass. 380 (1917), *Sears* v. *Childs,* 309 Mass. 337 (1941), *Balcom* v. *Balcom,* 333 Mass. 599 (1956), and *Old Colony Trust Co.* v. *Tufts,* 341 Mass. 280 (1960). We conclude that busying our pens to rewrite the third clause to impose a limitation on Emelie, or to convert the tenancy in common into a joint tenancy, a life estate, or a term of years would disregard Mr. Justice Holmes' sage advice that courts must be especially careful "not to substitute a lively imagination of what a testatrix would have said if her attention had been directed to a particular point for what she has said in fact." *Eaton* v. *Brown,* 193 U.S. 411, 413-414 (1904).

The judgment is reversed. A new judgment is to be entered declaring that the defendant, having taken by in-

---

[3] In *Frost* v. *Hunter,* the testator had specifically provided for the contingency that occurred, namely the death, before termination of a testamentary trust, of one of the two takers upon termination of the trust. The testator had stated that in such event the survivor was to pay to the estate of the deceased a fixed sum, if they had not made other arrangements between them, before taking a fee simple in the property. The court found that the fee simple interest was thus specifically limited by the proviso that the survivor owed the estate of the deceased a fixed sum, in the absence of other arrangements between the takers.

testate succession from her husband, G. L. c. 190, § 1(3), owns an undivided one-half interest in the subject premises in common with the plaintiffs and that she is not bound by the condition in the will's third clause.  There are to be further proceedings in the Probate Court on the partition action set forth in the defendant's counterclaim.

*So ordered.*