FRANCIS P. SEARS & others, trustees, vs. PHILIP MOEN
CHILDS & others.

Suffolk.    March 5, 1941. — June 23, 1941.

Present: FIELD, C.J., DONAHUE, QUA, & COX, JJ.

*Trust*, Construction, Payment of income, Discretionary powers of trustee,
Capital and income. *Probate Court*, Petition for instructions. *Equity
Jurisdiction*, Instructions to fiduciary. *Devise and Legacy*, Construc-
tion of particular phrase, Death of income beneficiary. *Words*, "Pro-
vided."

Provisions of a special testamentary trust, in substance that its income
should be "equally divided" among the testator's widow, son and
daughter and the survivor or survivors of them "until the death
of the last survivor, whereupon the income shall go into the residue
of my estate; provided, however, that if my son or daughter shall
die leaving children before the special trust is terminated, the share
of income payable to my deceased child at time of death shall there-
after be equally divided . . . among my deceased child's children,
and if there be no such children the income shall go into the residue
of my estate," were construed in the circumstances to mean that,
after the death of the widow and the subsequent death of the daughter
without children, the son surviving, only one half, and not the whole
of the income, should be paid to the son, and the other half should be
paid to a residuary trust established by the will.
Although certain instructions requested by a "general" trustee under
a will were not with respect to circumstances then existent, the in-
structions sought were given where it appeared that, from instruc-
tions at the same time asked for and given to a trustee under a "special"
trust in the same will, funds would presently be paid to the "general"
trustee to which the instructions he sought would be applicable.
A provision of a will, authorizing a trustee in his own absolute discretion
to determine finally what part of his receipts was principal and what
part was income, gave him power so to exercise his discretion after
serious and honest consideration.

PETITION, filed in the Probate Court for the county of
Suffolk on May 18, 1940, for instructions.

After a hearing by *Mahoney*, J., a decree was entered in
substance that one half of the net income of the "special
trust" so called, established by Article Fourth of the will of

Arthur E. Childs (including one half of the net income already received by the petitioners from the "special trust" since the death of Muriel Childs Whitney as well as one half of the net income of the "special trust" thereafter to be received by them from time to time) should be paid to Philip Moen Childs during his life, or until the termination of the "special trust" in case the "special trust" should be terminated during the life of Philip Moen Childs; and that, until the termination of the "special trust," the remaining one half of its net income as aforesaid should be paid to the "general trustees," and that they should add all sums so received by them to the principal of "Trust B" established by Article Fifth of the will and thereafter should deal with and treat them as a part of the principal of "Trust B."

An amended answer of the "general" trustees contained the following: "If it is decreed that the trustees under the 'special trust' shall pay one half of the net income from said 'special trust' to these respondents, these respondents pray that . . . [the court] instruct them as to their duty and particularly as to whether such income shall be added to and held by these respondents as principal of Trust A, B or C as the case may be, or disbursed by these respondents as income under the provisions of said Trusts A, B or C."

*R. M. Robinson,* stated the case.

*J. H. Sherburne,* (*J. B. Dolan* with him,) for Philip Moen Childs, individually.

*L. Withington & S. N. Towle,* for Roberta W. Childs, individually.

*John Wentworth,* for the guardian *ad litem,* submitted a brief.

Cox, J. This is a petition for instructions by the trustees of the "special trust," so called, established under the fourth article of the will of Arthur E. Childs. All parties in interest are before the court, including a guardian *ad litem* or next friend for persons unborn or unascertained. The surviving "general trustees," so called, under said will have also petitioned in their amended answer for instructions in the event that certain funds come into their hands as the result of the instructions asked for by the trustees of the

special fund. The judge of probate made a report of material facts under G. L. (Ter. Ed.) c. 215, § 11, from which it appears that the case was heard upon the petition and answers, the report and answer of the guardian *ad litem*, and statements of counsel. The facts stated in the petition and "pleadings" were stated to be true, and the judge found that they were. A stipulation of facts agreed to by all parties was submitted, and, in so far as material, was found as fact and made part of the record. No other testimony was offered, and there are no other findings of fact. A decree was entered, from which Philip Moen Childs, the testator's son, appealed, and from a part of which Roberta W. Childs, the son's wife, appealed. On this record it is for this court to determine whether the decree entered was correct on the facts reported. *Viens* v. *Viens*, 302 Mass. 366, 367, and cases cited.

The testator, who died on November 9, 1933, was survived by his wife, who died on January 17, 1939, his son, Philip Moen Childs, a party to these proceedings, and a daughter, Alice Muriel Childs, who was married on June 9, 1934, and died December 25, 1939, leaving no issue. The will in question was executed on December 7, 1931, and a codicil thereto on May 28, 1932. The will specifically mentions two grandchildren, the children of the son, both of whom are living and are represented in this proceeding.

The first prayer for instructions is directed to a portion of Article Fourth of the will, which is as follows: "(b) Subject to the provisions of Clause (g) hereof, the net income of the special trust shall be equally divided semi-annually among my wife, Alice Moen Childs, and my son, Philip Moen Childs, and my daughter, Alice Muriel Childs, and the survivors or survivor of them, until the death of the last survivor, whereupon the income shall go into the residue of my estate; provided, however, that if my son or daughter shall die leaving children before the special trust is terminated, the share of income payable to my deceased child at time of death shall thereafter be equally divided semi-annually among my deceased child's children, and if

there be no such children the income shall go into the residue of my estate." The first inquiry is "Should your petitioners pay to said Philip Moen Childs, individually, during his life, all of the net income from the 'special trust' so called, created by Article Fourth of the will of said Arthur E. Childs, or only one half . . . of such net income?" The second inquiry is "If under prayer First hereof it is decreed that your petitioners should pay said Philip Moen Childs, individually, during his life, only one half . . . of the net income from said 'special trust,' to whom should your petitioners pay the remaining one half . . . of the net income from said 'special trust'?" The inquiry of the general trustees, based upon the contingency that it might be decreed that one half of the net income from the special trust should be paid to them, is whether it should be added to and held by them as principal under the residuary clause or disbursed as income under that clause.

The will gave to the testator's wife a life estate in real estate in New Hampshire, together with certain timber rights. She also was given certain personal property in the main consisting of farm and household effects. A niece was given $5,000. The will, in Article Fourth, consisting of eleven subparagraphs indicated by the letters from (a) to (k), inclusive, sets up a special trust consisting of all of the testator's stock of The Columbian National Life Insurance Company and the American Investment Securities Company, and all his interest in trust certificates and fractional interests scrip issued to him under a trust agreement of the common stockholders of the securities company. The testator, at the time of his death, owned one thousand six hundred thirty-seven shares of the stock of the insurance company out of a total capitalization of twenty thousand shares. He also owned trust certificates for sixty-four thousand eight hundred twenty-four shares of common stock and one thousand three hundred eight shares of common stock of the securities company out of a total capitalization of two hundred sixty-five thousand four hundred seventy-six shares, and the securities company at that time owned approximately seventy per cent of the stock

of the insurance company. The value of the special trust, as shown by the last inventory on the appointment of one of the special trustees who succeeded one of the trustees named, was $296,290. After providing for the term of existence of the trust, subparagraph (b), hereinbefore quoted, appears. By the provisions of subparagraph (g), referred to in said subparagraph (b), the special trustees are authorized to purchase additional stock of the insurance and securities companies, and trust certificates and scrip issued under the stock trust agreement, hereinbefore referred to, and to devote to that purpose the whole, or any part, of the income received by them. They are also authorized to borrow money and to pledge, not exceeding one fourth ("in then value") of the special trust property, as security for such loans. Special trustees, acting unanimously, are authorized by subparagraph (h) to sell at any time for cash, at such prices and upon such terms and conditions as they may consider proper, the whole or any part of the stocks, trust certificates, scrip and other property, if any, held by them, the proceeds of such sales to be paid over by them as provided in subparagraph (c). Subparagraph (c) provides that the proceeds of the sale of all or any portion of the special trust property, or, upon termination of the trust, the entire trust property or proceeds from the sale thereof, shall be equally divided among such of trusts "A, B and C" described in Article Fifth of the will as may be then existing. It is provided by subparagraph (d) that the executors shall not distribute, sell, encumber or otherwise deal with or dispose of the stock, trust certificates or scrip, or any portion thereof, unless other assets shall be insufficient to satisfy obligations against the estate and meet administration expenses; and they are directed to transfer said securities to the special trustees as soon after the testator's death as may be safely and properly accomplished. Provision is made for the appointment of special trustees to fill any vacancies, for their compensation, and for the keeping of accurate books of account, and the special trustees and also the general trustees, hereinafter referred to, are authorized by sub-

paragraph (k), in their own absolute discretion, to determine finally what of their respective receipts is principal and what is income, and what expenses shall be charged against principal and what against income.

Article Fifth of the will sets up trusts A, B and C. It provides that all the rest, residue and remainder of the testator's property, subject to the provisions of "Paragraph Ninth" which relate to an agreement entered into in 1918 between the testator's son, the son's wife, the testator and his wife, the terms of which need not be gone into, are given "in three separate equal portions" to three named trustees. Trust A provides that one third of said residue shall be held in a separate trust by the "general trustees" for the benefit of the testator's wife, the net income of which shall be paid to her quarterly during her life. Upon her death the trust fund is to be equally divided between trusts B and C, but if either trust shall have terminated before her death, the trust fund shall be paid into the then existing trust, and if both trusts shall have terminated before her death, the trust fund shall be divided between the testator's two grandchildren (children of the testator's son) or survivor, and if both said grandchildren are then deceased, the trust fund shall be divided among the testator's issue by right of representation.

Trust B provides that one third part of said residue shall be held in a separate trust by the general trustees for the benefit of the testator's son, the son's wife, and their two children. Provision is then made for payments quarterly from the net income of $625 to the grandchildren, $625 to the son's wife for life or until she remarries, and the balance to the son during his life. Upon the son's death, the income that he would have been entitled to receive had he lived is to be divided quarterly between the two grandchildren or survivor during life. Upon the death of the son and the death or remarriage of the son's wife, the trust fund is to be divided between said grandchildren or survivor, and if both grandchildren are then deceased, the fund is to be equally divided between trusts A and C or paid over to the trust fund then existing, if either trust shall

have terminated, and if both trusts A and C have terminated, the fund is to be divided among the testator's issue by right of representation.

Trust C provides that one third part of the residue shall be held in a separate trust by the general trustees for the benefit of the testator's daughter, the net income of which shall be paid to her quarterly during her life. She is entitled to appoint by will to whom said trust fund shall be payable upon her death. In default of such will the trust fund, upon her death, shall be equally divided between trusts A and B, but if either trust shall have terminated before her death, the fund shall be paid into the then existing trust, and if both trusts shall have then terminated, the fund shall be divided among the testator's issue by right of representation.

The testator's daughter, for whose benefit Trust C was established, was married the year after her father died. At the time of his death, and for many years before, his daughter was afflicted with a chronic incurable disease, and her condition was well known to him. She died in December, 1939, leaving no issue surviving her, and left a will, duly probated, in which she purported to exercise the power, conferred upon her by her father's will, by which she devised to her husband, William E. Whitney, all the residue of her property over which she had any power of appointment. Whitney, who is a party to this proceeding, makes no claim upon the income or proceeds of the sale of securities in the special trust, nor under the appointment of himself by his wife's will, except for the fund in Trust C as it existed at the time of her death, with certain reservations which are not material to any issue in the case at bar. It is unnecessary to state in detail other provisions of the will which deal in general with the right of the beneficiaries to alienate their interests, the freedom of such interests from the claims of creditors, and general instructions to the executors and trustees as to the performance of their respective duties, nor is it necessary to go into the details of the codicil where provision is made for the crediting against the income payable to the son's wife of such

amounts as she may receive from him, which, under any order of court, he is required to pay.

1. "The accepted rule for the interpretation of a will is to ascertain the intent of the maker as gathered from the testamentary language read in the light of the knowledge possessed by him and of the material circumstances attendant upon him at the time, attributing due weight to all the words used, not stressing provisions of doubtful meaning but searching for a general plan from a survey of the whole instrument, presumably designed to express a consistent and harmonious purpose, and then to give effect to that intent unless prevented by some rule of law." *Sewall* v. *Elder*, 279 Mass. 473, 476–477, and cases cited. Each will must be examined in its entirety in an endeavor to find out the purpose disclosed, *Prescott* v. *St. Luke's Hospital of New Bedford*, 280 Mass. 229, 232, and it is familiar law that the grammatical construction, or the order of particular sentences, is never allowed to defeat the general intention of the testator, as clearly manifested by all the provisions of the will taken as a whole. *Miller* v. *Parish of the Epiphany, Winchester*, 302 Mass. 323, 326.

An examination of the entire will discloses that the testator had two dominant purposes in mind, (1) to safeguard his investments in the insurance and securities companies, and (2) to provide for his immediate family. After making the minor provisions for his wife and niece, he proceeded immediately, by careful provisions, to establish the special trust, the income of which at the time of his death was approximately $60,000 per year. Although he authorized his special trustees to devote the whole or any part of the income received by them to the purchase of additional shares of stock under subparagraph (g), and for the termination of the trust by sale of all property held by his trustees, it is evident that he realized there might be net income unexpended by his trustees for purchases as authorized. Accordingly, he proceeded to provide, in subparagraph (b), for the payment of such net income, as hereinbefore set out, by directing that it be equally divided semiannually among his wife, son and daughter, and the survivors, or

survivor, of them until the death of the last survivor, "whereupon the income shall go into the residue of my estate." The words used are plain and unmistakable. But he then made use of the words "provided, however, that if my son or daughter shall die leaving children before the special trust is terminated, the share of income payable to my deceased child at time of death shall thereafter be equally divided semi-annually among my deceased child's children." These words are also plain and unmistakable. But the sentence continues: "and if there be no such children the income shall go into the residue of my estate." The son contends that the last quoted clause was intended to apply only when all grandchildren had died, and that the entire phrase commencing with the words "provided, however," was intended, and should be construed, as dependent upon the introductory words "provided, however, that if my son or daughter shall die leaving children before the special trust is terminated . . ."; that until this "contingency" arises, the second phrase is of no force and should be disregarded; that the daughter died without leaving children; and that the proviso did not take effect on her death, and will not take effect until and unless the son dies leaving children. But the language following the words "provided, however," is that if the son "or" daughter shall die leaving children before the special trust is terminated, the share of income payable to "my deceased child" at the time of death shall thereafter be equally divided semiannually among my deceased "child's children." We think it follows up to this point that the testator intended to modify the first phrase in subparagraph (b) to the extent that the survivor of the wife, son and daughter would not take the entire net income for life if either the son or the daughter should die leaving children before the special trust was terminated. As it turned out, the daughter did die leaving no children, but if she had left children, we are of opinion that they would have taken the share of income to which she was entitled at the time of her death.

The word "provided" in common speech naturally expresses a qualification, limitation, condition, or an excep-

tion respecting the scope and operation of words previously used. "Although a proviso in statutes, contracts or wills not infrequently introduces new or independent matter, its true office and its general purpose is to restrict the sense or make clear the meaning of that which has gone before." *Attorney General* v. *Methuen*, 236 Mass. 564, 573. *Old Colony Trust Co.* v. *Richardson*, 297 Mass. 147, 151. See *Spaulding* v. *McConnell*, 307 Mass. 144, 147. We are of opinion that the proviso, despite the words in the first clause, "whereupon the income shall go into the residue of my estate," limits the provisions in the first clause as to the survivor in the event that the son or daughter dies leaving children, see *Fiske* v. *Eddy*, 147 Mass. 151, 153, 157, and that the case is distinguishable in this respect from *Brennan* v. *Brennan*, 185 Mass. 560.

But the difficulty does not end here, for the testator concluded subparagraph (b) by providing that if there were no "such" children, that is, of his son or daughter, "the income shall go into the residue of my estate." In other words, after providing for the payment of the share of income to the children of the deceased child, the testator went further and sought to provide that if there were no children, "the income," theretofore payable to the deceased child, should go into the residue. The words "such children" obviously refer to the children of either the son or the daughter, and the words "the income" refer to "the share of income" payable to a deceased child at time of death. The alternative provisions as to children surviving, or there being no children, relate to the times of death of the testator's children. See *Stone* v. *Bradlee*, 183 Mass. 165, 170.

It is to be assumed that the testator did not intend to incorporate inconsistent provisions in his will. The various provisions are to be so construed, if they reasonably can be consistently with the testator's intention, as to avoid repugnancy. "In case of irreconcilable differences, a clear and unambiguous provision, coming later in the will, controls, as being more likely to express the final purpose of the testator. For the purpose of arriving at the testator's intention in respect to any particular portion or portions of

the will which are doubtful, the whole instrument will be considered." *Shattuck* v. *Balcom,* 170 Mass. 245, 251. *Taylor* v. *Albree,* ante, 248, 258. This is not a case where the several clauses in subparagraph (b) are independent statements having no relation to one another. On the contrary, we are of opinion that the second clause limits the first, as hereinbefore pointed out, and that the final clause, when read with the other two, discloses the intention of the testator that the share of income of a child who dies leaving no children shall go into the residue of the estate. *Pope* v. *Pope,* 209 Mass. 432, 440, 441. There is a statement in the case of *In re Estate of Creighton,* 91 Neb. 654, 664, that, when there are inconsistent and irreconcilable provisions in a will, the latest is generally supposed to express the intention of the testator, but that this rule does not apply to ambiguous or apparently inconsistent words in the same sentence or provision. No authority is cited for this statement, but we are of opinion that the rule so stated should not be applied in the case at bar, for we think that the true construction of the language of subparagraph (b), as evidenced by the will as a whole, is as we have indicated. See *Turnbull* v. *Whitmore,* 218 Mass. 210, 214, 215; *Williams* v. *Taylor,* 276 Mass. 349, 360.

But the son contends that any difficulties arising from the language used in said subparagraph (b) should be resolved by reading the word "when" for "if" in the last clause of the paragraph. See *Janney* v. *Sprigg,* 7 Gill, 197, 202.; *Hyde* v. *Rainey,* 233 Penn. St. 540, 547.; *Owen* v. *Field,* 102 Mass. 90, 105. He would then have the proviso part of this paragraph read as follows: "provided, however, that if my son or daughter shall die leaving children before the special trust is terminated, the share of income payable to my deceased child at the time of death shall thereafter, *until the death of the survivor of my deceased child's children,* be divided semi-annually among my deceased child's children, and *when* there be no *longer any* such *child or* children the income shall go into the residue of my estate." But we are of opinion that it is unnecessary to resort to this treatment of the testator's language in order to deter-

mine his intention. See *Dallinger* v. *Merrill,* 224 Mass. 534, 538.

The other dominant purpose that the testator indicated by the language of his will was to provide for his family. He may well have assumed that his son, his son's wife, and their children would survive his wife. He knew that his daughter was afflicted with an incurable disease. She was unmarried. The testator knew at the time he made his will and codicil and at the time of his death, that his wife was possessed of an estate in her own right of several hundred thousand dollars. He had in mind clearly the agreement that he and his wife had entered into with their son and his wife, which contained provisions for the support by the son of his wife. In working out trusts A, B and C, as hereinbefore pointed out, there is a general scheme of survivorship subject to the right of the daughter to appoint by will to whom the fund in trust C shall be payable on her death, and further limited as to possible equality of outcome by the fact that trust B makes provisions for the son's wife and children. As things have turned out, the widow and the daughter have deceased, leaving the son, his wife and their children as the beneficiaries under trust B, which has been augmented, it is assumed, by so much of the fund in trust A as was paid into it upon the death of the widow. The book value of trust B, after the addition of one half of trust A, is approximately $86,000. Its actual value in June, 1940, was approximately $78,000. In the meantime, the current annual income from the special trust has dropped to approximately $13,000, and the estimated annual net income from trust B is approximately $2,300. It appears that at no time since the death of the testator has the net income from trust B been sufficient to make any payment whatever to the son's wife. The testator must have realized that he was leaving the way open for his daughter to dispose of the share of the residue that was held in trust for her, although, of course, there was the possibility that she might not exercise the power conferred upon her, in which event that trust fund would go into one or both of the others, as the case might be. But for some reason which we

must assume was sufficient, the testator set up trust B so as to make the first charge upon its income the annuity payable to his grandchildren, the second, the annuity payable to his son's wife, and then providing that the balance of any income should go to his son. The testator may also have had in mind, taking into consideration the reasonable possibility that his wife would not survive the son and that his daughter might not, that the beneficiaries under trust B might suffer if, under Article Fourth, subparagraph (b), the survivor of the beneficiaries therein named should take all the income of the special trust. In other words, he may reasonably have taken into account that the very thing that did happen, would happen, namely, that there would be insufficient income from the fund established by trust B to meet the payments therein required; while the son, if there were no such ultimate provision as appears in said subparagraph (b), would be enjoying the entire net income from the special trust.

In the application of the familiar general rule as to the interpretation of wills, we are of opinion that the decree of the Probate Court was right in its instructions as to the disposition of the net income of the special trust, so called, to the effect, in the circumstances, that the son is entitled to one half thereof during his life, or until the termination of the special trust, in the event that it is terminated during his life, and that the other one half is payable to the general trustees under trust B.

2. There remains for disposition the question of the trustees of the general fund as to the appropriation and disposition of any income received from the special trust. The "absolute discretion" conferred upon the special and general trustees has already been referred to. It is true that the general trustees have, up to the moment, received no money from the special trustees, and accordingly, that they have had no opportunity or occasion to exercise the discretion conferred upon them with respect thereto, but it is apparent that they will soon be called upon to exercise such discretion, so that it is as well to answer their inquiry as to invite a return of the case to this court with the same

question by not answering it now. See *Proctor* v. *Heyer*, 122 Mass. 525, 528, 529; *Mayberry* v. *Carey*, 268 Mass. 255, 259.

We are of opinion that the question involved is settled by what was said in *Dumaine* v. *Dumaine*, 301 Mass. 214, and that it is unnecessary to go over the matter again. The general trustees, under subparagraph (k), have discretion, after serious and responsible consideration, short of arbitrary or dishonest conduct, when they have to determine whether any money or other properties received by them from the special trustees are principal or income, and what shall be charged against principal and what shall be charged against income.

The decree of the Probate Court is to be modified in respect to the answer to the question of the surviving trustees under the will of each of the three trusts established by Article Fifth of said will so as to conform to this opinion and as so modified is affirmed. Costs as between solicitor and client are to be in the discretion of the Probate Court, to be paid out of the trust funds.

*Ordered accordingly.*