268 P.2d 1108

**READ MULLAN MOTOR CO.**

v.

**McATEE.**

**No. 5813.**

Supreme Court of Arizona.

April 12, 1954.

Jennings, Strouss, Salmon & Trask, by O. M. Trask, Phoenix, for appellant.

Evans, Hull, Kitchel & Jenokes, by Norman S. Hull & Earl Carroll, Phoenix, for appellee.

PHELPS, Chief Justice.

This is an appeal from a judgment of the Maricopa County Superior Court in favor of plaintiff-appellee John L. McAtee and against defendant-appellant Read Mullan Motor Company, a corporation, and from an order denying defendant's motion for a new trial. The cause as to defendants Read Mullan and W. R. Wayland was dismissed in the lower court from which no appeal was taken.

The transactions out of which this litigation arose are in substance as follows: In September 1944, plaintiff McAtee, Read Mullan and W. Roy Wayland formed a partnership known as "Consolidated Motors" by an instrument in writing, primarily to engage in the business of selling new and secondhand motor vehicles, parts, accessories, etc., but also to engage in other businesses and activities as well. In 1948 the Read Mullan Motor Company, a corporation, was organized by the copartners to operate a portion of the automobile business. Each of the three parties was issued one qualifying share of the capital stock of the corporation and the balance of 497 shares were issued to the partnership. Mullan was made president of the corporation, W. Roy Wayland—vice president, and plaintiff—secretary-treasurer, and later vice president. Mullan owned 70% of the copartnership business, Wayland 20% and plaintiff 10%. The stock in the corporation was held by the partners in the same proportion.

At the time the partnership was formed the copartners entered into a separate written agreement giving to Mullan an option to purchase the partnership interest of the other partners (which would include their interest in the defendant corporation subsequently organized) at inventory value plus 10% by giving 30 days' notice in writing.

In February, 1951, Mullan by notice in writing, exercised his option to acquire the interest of plaintiff in the partnership as of March 31, 1951, and began negotiations with plaintiff to agree upon or establish in accordance with the terms of the option agreement, the purchase price of his interest in the partnership and its various activities including the defendant corporation. On March 31, 1951, plaintiff

190

tendered his resignation as a director and officer of the corporation and surrendered his stock therein.

The specific controversy here arose out of plaintiff's claim against defendant for a bonus or additional compensation based upon the provisions of a resolution adopted by the board of directors of defendant corporation fixing the salary of plaintiff " * * * at $600 per month plus 10% of the first $80,000 of the earnings of the company each year; * * *." The salary of $600 per month was paid to plaintiff monthly but upon the dissolution of the partnership plaintiff claimed that under the provisions of the resolution he was entitled to additional compensation of 10% of the profits of the corporation accumulated as of March 31, 1951, which the corporate records showed to be $69,372.04. Plaintiff alleged that defendant made in excess of $80,000 net profit during the year 1951 and this is admitted by defendant. It is defendant's contention, however, that plaintiff is entitled to that proportion of 10% of the $80,000, or $8,000, which the number of months worked by him for defendant during 1951 bears to the total of 12 months or one-fourth of $8,000 or $2,000. Defendant tendered the sum of $2,000 to plaintiff in the form of a check on January 3, 1952. This tender was rejected and an action brought to recover $6,937.20 and interest, being 10% of the net profits earned by defendant up to and including March 31 of that year.

The resolution adopted by the directors of defendant corporation will be hereinafter set out haec verba.

The cause was tried to the court sitting without a jury and judgment entered against defendant for the full amount. Defendant has presented three assignments of error:

Assignment No. 1 is based upon the court's ruling that the proviso in the resolution adopted by it constituted a part of the agreement between plaintiff and defendant and upon its refusal to reform the contract to exclude said proviso for the reason that the evidence does not support such ruling;

Assignment No. 2 asserts that the court erred in granting judgment in favor of plaintiff and against defendant for the reason that it is contrary to the express terms of the agreement;

Assignment No. 3 asserts that the court erred in sustaining plaintiff's objection to certain questions propounded by counsel for defendant to his witness James W. Coombs, a certified public accountant.

The question presented for our determination we believe to be purely one of law. Its solution depends upon the interpretation given to the resolution above mentioned, adopted by defendant on February 1, 1948. The resolution reads as follows:

"Upon motion duly made and seconded the salary of John L. McAtee is fixed at $600.00 per month plus

10% of the first $80,000.00 of the earnings of the company each year; the $600.00 per month to be paid monthly and the 10% of the earnings to be paid on the 15th day of January following the close of the year; provided, that in the event of death or termination of employment the total amount of the monthly salary and percent of earnings shall become immediately due and payable."

The court below ruled that the resolution was ambiguous and admitted testimony from both plaintiff and defendant to aid in its interpretation but stated at the close of the case that the evidence received gave little, if any, assistance to it in arriving at the intention of the parties. There is no material conflict in the evidence adduced relating to the facts and circumstances surrounding the adoption of the resolution or the acts of the parties relating thereto so that assuming its ambiguity, it still presents a question of law and under the situation here presented this court is not bound by the interpretation given it by the lower court, McFadden, Sheriff, v. Watson, 51 Ariz. 110, 74 P.2d 1181; Sanders v. Brown, 73 Ariz. 116, 238 P.2d 941, although its conclusion should be given careful consideration.

Let us first analyze the language of the resolution without reference to any evidence adduced in aid of its interpretation. We believe that the sense of the thing as a whole is that McAtee is hired on a yearly basis to perform personal services, and his salary for his services during the period of one year ending January 1st is fixed at the rate of $600 per month, plus an additional compensation of 10% of the yearly profits not in excess of $80,000. His percentage compensation is based upon yearly profits, not quarterly profits nor semi-annual profits, and obviously yearly profits cannot be computed except upon termination of the year's business. Following the broad and major manifestation of intent there is a proviso, that if McAtee dies or his employment terminates before the end of a year then all his monthly salary and percent of earnings shall become immediately due and payable. We believe the meaning this conveys to reasonable men is that such of the salary as shall have been earned is immediately due, but we cannot see that this proviso determines or changes the amount of compensation, or the rate of compensation, its purpose is rather to determine when it shall be paid, and to determine how much shall be paid we must refer to the portions preceding the proviso. That part of the yearly salary paid at the rate of $600 per month is easily computable, but that part which is paid at the rate of 10% of the first $80,000 of the year's profits can of necessity be computed only after the entire year has elapsed. We believe that as applied to the percent of the $80,000 due, the word "immediately" in the proviso accelerates the due date so that inter-

est begins to run on the amount finally found to be owing, from the date of termination of employment. But the amount which is to be paid on the percentage of profits is not affected by putting "immediately" in the proviso. The salary is in contemplation of a year's services, and if those services are not rendered in toto, but only a portion thereof are rendered, no compensation is due for the portion not rendered. Proportionately, one-fourth of the contemplated services were rendered, and we believe justice is served by payment of one-fourth of the contemplated salary.

An examination of the provisions of the partnership contract relating to plaintiff's compensation together with the testimony of plaintiff, Wayland and Mullan, to the effect that it was the intention of the parties in adopting the resolution in question to follow the partnership provisions relating to plaintiff's compensation unmistakably confirms the above view. Wayland and Mullan testified unequivocally that it was the intention of the parties in adopting the resolution that the corporation should follow the intent of the partnership agreement relating to the so-called bonus of 10% of the earnings of the corporation not in excess of $80,000. Mr. McAtee upon cross-examination on this point, after a considerable number of non-responsive answers to questions propounded admitted this to be true. The provision of the partnership agreement relating to compensation of the plaintiff reads as follows:

"J. L. McAtee $450 per month plus 10% of the profits of the business, except those profits in excess of $80,-000 in a business year.

" 'Business year' as used in this Article shall mean that used in closing the partnership accounts."

This compels the conclusion that the phrase 10% of the first $80,000 of the earnings of the company each year was intended to mean exactly the same as "10% of the profits of the business except those profits in excess of $80,000 in a business year."

Although the facts in Fidelity Trust Co. v. Whitehall Cement Mfg. Co., 295 Pa. 179, 144 A. 915, were different, the principle involved is the same. There deceased was employed by defendant at $20,000 per year plus 6% of all net earnings in excess of $60,000. He died on March 12 and his executor brought suit to recover 6% of the net profits for the entire year, which amounted to $33,000. The court held that such compensation was to be calculated on the proportion of the entire year's profit measured by the fractional part of the year in which the intestate lived, to wit, one-fifth thereof. To the same effect in substance at least, is Kollman v. McGregor, 240 Iowa 1331, 39 N.W.2d 302.

We believe these cases set up the correct rule and that plaintiff is entitled only to the proportionate part of 10% on $80,000 earnings, to wit, $8,000, which the period from January to March 31 bears to the whole year, that is, one-fourth thereof, and that the amount to which plaintiff is entitled under the provisions of the resolution is $2,000. The fact that Mullan in April, 1951, authorized the bookkeeper to charge as expense to the corporation and credit to plaintiff's account what was intended to be 10% of the profits earned to March 31 is immaterial for the reason that Mullan had no authority to make such a disposition of the earnings of the corporation without authority of the board of directors. Wayland was a stockholder and entitled to 20% of such earnings. Mullan testified he told the bookkeeper in July, 1951, to remove this charge. The bookkeeper said he received the instruction in January, 1952. Whether it was July or January is immaterial because of a lack of authority to direct its entry originally. Let us observe here that the separation of plaintiff from the business was mutual and not compulsory as intimated, in that it had previously been agreed to by written agreement based upon valuable consideration. Other questions raised by defendant become immaterial and will therefore not be discussed. Whether plaintiff is entitled to further adjustments on the inventoried value of the partnership assets we are not called upon to determine.

Judgment reversed with directions to enter judgment for plaintiff for $2,000. Defendant is entitled to its costs in the trial court and on appeal.

STANFORD, LA PRADE, and UDALL, JJ., concur.

WINDES, Justice (dissenting).

Regretfully I am compelled to disagree with my associates in the decision reached herein. The problem presented herein is clear-cut and comparatively simple. It is merely a determination of what the contracting parties intended when plaintiff was employed by the defendant and they agreed that plaintiff's compensation was to be as follows:

> "Upon motion duly made and seconded, the salary of John L. McAtee is fixed at $600 per month plus 10% of the first $80,000 of the earnings of the earnings of the company each year; the $600 per month to be paid monthly and the 10% of the earnings to be paid on the 15th day of January following the close of the year; *provided, that in the event of the death or termination of employment, the total amount of the monthly salary and per cent of earnings shall become immediately due and payable."* (Emphasis supplied.)

This contract provides for the payment of compensation in addition to salary of 10 per cent of the first $80,000 earned each year. The opinion correctly construes this to mean 10 per cent each year on all earnings up to $80,000. The contract also provides that this annual 10 per cent is to be paid on January 15th, *provided* that if the employment terminates this percentage shall become *immediately* payable.

In order to interpret this contract it is imperative that we determine what the parties intended when they stated that if the contract is terminated before January 15th, the percentage should become immediately payable. We cannot do this correctly without applying the law that defines the purpose of a proviso following a general provision in a contract. It is universally the law, and so far as I have been able to discover never disputed, that the purpose and reason for such a proviso is to restrict, limit or qualify a prior provision to which it is applicable. It conditionally defeats or avoids the obligation formerly provided. 17 C.J.S., Contracts, § 343; Sears v. Childs, 309 Mass. 337, 35 N.E.2d 663, 667. In this case the Massachusetts court expresses the purpose very clearly in the following language:

"The word 'provided' in common speech naturally expresses a qualification, limitation, condition, or an exception respecting the scope and operation of words previously used. 'Although a proviso in statutes, contracts or wills not infrequently introduces new or independent matter, its true office and its general purpose is to restrict the sense or make clear the meaning of that which has gone before.' Attorney General v. [City of] Methuen, 236 Mass. 564, 573, 129 N.E. 662, 665".

Applied here the proviso that in the event of termination of the employment the percentage shall be immediately payable limits and qualifies the preceding provision that the percentage is not payable until January 15th of each year. The payable date of January 15th becomes inoperative and is defeated and avoided upon the happening of the condition set forth in the proviso to-wit: termination of employment. By the proviso the payable date of January 15th of each year is conditionally modified and applies only to conditions wherein the employment is not terminated. I have been unable to find any authority that this is not the true function of a proviso. The majority opinion ascribes to the proviso a function and purpose diametrically opposed to the true function as announced by all courts. In other words, the majority refuses to allow the proviso to operate as the law directs. Their refusal to allow immediate payment of any percentage (as is expressly provided therein) gives an effect which would require the proviso to read as follows:

"* * * provided in the event of termination nothing shall be payable until the following January 15th but the amount ultimately found to be due shall draw interest (at some unknown rate) from the date of termination."

Thus, it is plain not only no qualifying, limiting or restrictive effect on the preceding provisions of the contract is given the proviso, but the court has struck the provision therein for immediate payment, thereby limiting the proviso itself rather than the prior provision to which it is applicable, and thereby giving it the reverse effect to that which the law requires. In addition, the court has added an interest provision which I am sure never occurred to the contracting parties. To me this amounts to the interpretation of a court made contract.

I interpret the majority as an expression of the opinion that there is an irreconcilable conflict between the provisions of the proviso and the preceding provisions of the contract. A proviso is not intended to harmonize with the provisions of the contract to which it applies. We must assume the parties intended no such conflict. Should there be irreconcilable differences, the provisions in the proviso will be considered as a more likely expression of the intention of the parties. Sears v. Childs, supra. In any event, there is no irreconcilable repugnancy here.

One of the reasons stated for not giving the effect the law requires to the proviso is that its provisions are incapable of execution for lack of certainty. This is another way of saying that the provision for immediate payment is void for uncertainty. The contract without the provision requires payment of the percentage on the first $80,000 payable on January 15th. With the proviso it requires *immediate* payment of a percentage on some basis. I find no difficulty in finding a base from which to calculate this percentage. The only possible base would be the profits at the time of termination. I think, in the absence of evidence concerning the intention of the parties as to what this base should be, it would of necessity be the profits at the time of termination. However, if there should exist in some minds uncertainty on this point, such has been completely eliminated by the evidence submitted at the trial. There was evidence to the effect that upon the termination of the plaintiff's employment, the president of the defendant corporation caused to be posted in the books a credit to the account of the plaintiff of an amount equal to 10 per cent of the profits at the time of termination. It likewise appears that in settling the partnership affairs of the president of the corporation and the plaintiff, this item was used as a liability of the corporation. The plaintiff, the president and one of the members of the board of directors of the defendant are the ones who made the contract of employment with the plaintiff. From this evidence the

trial court had a right to conclude that the parties by their conduct interpreted the contract to mean that the base to be used in calculating the percentage payable at the time of termination was the profits accrued at that time. When it was expressly stipulated that some amount was payable on the date of termination and all we are asked to determine is what amount, certainly the method used by the defendants· in calculating the amount is of substantially compelling force and certainly takes it out of the category of being void for uncertainty. The rule is simply and clearly stated in 12 Am.Jur., Contracts, section 249, as follows:

> "In the determination of the meaning of an indefinite or ambiguous contract, the interpretation placed upon the contract by the parties themselves is to be considered by the court and is entitled to great, if not controlling, influence in ascertaining their understanding of its terms."

The majority brushes this important evidence aside and gives it no effect upon the asserted ground it was immaterial because the president of the corporation had no authority to interpret the contract for the corporation. Frankly, it is difficult for me to follow such reasoning. This contract was made by officers of the corporation constituting its board of directors. The intention of the officers must of necessity be the intention of the corporation. Consequently, when the identical officers who negotiated the contract say by their conduct, while still acting for the corporation, what their intention was when the contract was made, they are telling us what the corporation intended at the time the contract was negotiated.

In my view, it was very important and should control, and when the effect is given the proviso which the basic law requires, either with or without the evidence of the parties as to interpretation, the trial court arrived at the only reasonable or legal conclusion and its judgment should be affirmed.