FRANCITAS GAS COMPANY, Appellant,

v.

Robert S. CALVERT et al., Appellees.

No. 10716.

Court of Civil Appeals of Texas.

Austin.

Jan. 20, 1960.

**390**

Johnson, Hite & Callender, San Antonio, R. Dean Moorhead, Austin, for appellant.

Will Wilson, Atty. Gen., W. V. Geppert, L. P. Lollar, Asst. Atty. Gen., for appellees.

GRAY, Justice.

Appellant, Francitas Gas Company, filed this suit to recover taxes paid under protest, Art. 7057b, Vernon's Ann.Civ.St., and has appealed from an adverse judgment.

Appellant owns and operates a natural gas cycling plant in Jackson County, Texas, through which plant it processes gas from gas wells for its liquid hydrocarbon content. For all purposes material to the question here presented it may be said that: the gas processed by appellant is from the Weed Sand in Jackson County; substantially all of the gas from said sand has been processed through appellant's plant at least one time; after the removal of the liquid hydrocarbons the residue gas was returned, by cycling methods, to the Weed Sand, and all taxes due the State under the provisions of Art. 7047b, Vernon's Ann.Civ. St., calculated on the basis of "(⅗) of the gross value of all liquids extracted, separated and saved" have been paid.

Appellant has withdrawn the residue gas supra from the Weed Sand and has sold it to the Aluminum Company of America. The tax alleged to be due on these sales was paid under protest and presents the question for decision. It is the liability of appellant for the tax and not its amount that is in controversy.

At the trial the parties stipulated, among others, the following facts:

"Plaintiff is a producer of the gas in the Francitas Cycling Unit for itself and for the owners of royalty and overriding royalty interests therein and is charged with the duty of reporting and paying the production taxes thereon to the State of Texas, and is likewise a proper party to maintain this suit.

"* * * Plaintiff did not sell the dry gas resulting from the cycling operations, and said gas was returned to the Weed Sand until it was subsequently withdrawn from said Sand and sold to the Aluminum Company of America within the State of Texas, said withdrawals for said purpose having begun on or about June, 1950,

and having continued to the date of the trial hereof.

" * * * for the purpose of this suit Plaintiff shall be considered the producer of all of said gas and liable for all the taxes thereon unless the taxes are not due under one or more of Plaintiff's grounds of protest."

The provisions of Art. 7047b, supra and its amendments prior to 1959 present the formulae for determining the question presented. The tax rate fixed by the above statute and its amendments has not remained the same however the parties have stipulated as to the amount of such taxes and in view of this stipulation the rate is not here material. For the purpose of determining whether the tax paid by appellant under protest is due we will refer to Art. 7047b, Acts 1945, 49th Leg., p. 423, Ch. 269, prior to its amendment in 1954 as the Act and to the 1954 amendment as the amendment. The Act in part provides:

"Tax on producers of natural gas.

"Section 1. (1) There is hereby levied an occupation tax on the business or occupation of producing gas within this State, computed as follows:

"A tax shall be paid by each producer on the amount of gas produced and saved within this State * * *

"In calculating the tax herein levied, there shall be excluded: (a) gas injected into the earth in this State, unless sold for such purpose; (b) gas produced from oil wells with oil and lawfully vented or flared; and, (c) gas used for lifting oil, unless sold for such purpose.

"(2) The market value of gas produced in this State shall be the value thereof at the mouth of the well; however, in case gas is sold for cash only, the tax shall be computed on the producer's gross cash receipts. In all cases where the whole or a part of the consideration for the sale of gas is a portion of the products extracted from the producer's gas or a portion of the residue gas, or both, the tax shall be computed on the gross value of all things of value received by the producer, including any bonus or premium; provided that notwithstanding any other provision herein to the contrary, where gas is processed for its liquid hydrocarbon content and the residue gas is returned by cycling methods, as distinguished from repressuring or pressure maintenance methods, to some gas producing formation, the taxable value of such gas shall be three-fifths (3/5) of the gross value of all liquids extracted, separated and saved from such gas, such value to be determined upon separation and extraction and prior to absorption, refining or processing of such hyrocarbons and the quantity of the products shall be measured by the total yield of the processing plant from such gas."

Among the definitions contained in the Act is the following:

"Sec. 2. (1) For the purpose of this Act 'producer' shall mean any person owning, controlling, managing, or leasing any gas well and/or any person who produces in any manner any gas by taking it from the earth or waters in this State, and shall include any person owning any royalty or other interest in any gas or its value whether produced by him, or by some other person on his behalf, either by lease, contract, or otherwise."

The amendment levies the tax in the same language above quoted and fixes its rate as follows:

"(a) From the effective date of this Act until September 1, 1955, a tax shall be paid by each producer on the amount of gas produced and saved within this State equivalent to nine per cent (9%) of the market value thereof as and when produced;

"(b) From September 1, 1955, until September 1, 1956, the rate of said tax shall be eight per cent (8%) of the market value of the gas as and when produced.

"(c) From and after September 1, 1956, the rate of said tax shall be seven per cent (7%) of the market value of the gas as and when produced."

It then re-enacts the same provisions quoted from the Act, supra, except the definition.

Appellant has stipulated that it is a "producer" but it argues that the residue gas has been produced and has been taxed. This contention may be bottomed on the provisions of section 1(2), supra, that:

" * * * provided that notwithstanding any other provision herein to the contrary, where gas is processed for its liquid hydrocarbon content and the residue gas is returned by cycling methods, as distinguished from repressuring or pressure maintenance methods, to some gas producing formation, the taxable value of such gas shall be three-fifths (3/5) of the gross value of all liquids extracted, separated and saved from such gas, such value to be determined upon separation and extraction and prior to absorption, refining or processing of such hydrocarbons and the quantity of the products shall be measured by the total yield of the processing plant from such gas."

Section 1(2) of the Act provides the basis for computing the tax, and the sentence of which the above quote is a part provides the basis for computing the tax when products are extracted from the gas. The above quote provides for an exception and makes clear the rate of the tax when products are extracted and the residue gas is returned to some gas producing formation and restricts the tax to those products. Knight v. Chicago Corporation, 144 Tex. 98, 188 S.W.2d 564. There the Court quoted with approval from Sears v. Childs, 309 Mass. 337, 35 N.E.2d 663, 667 as follows:

"The word 'provided' in common speech naturally expresses a qualification, limitation, condition, or an exception respecting the scope and operation of words previously used. 'Although a proviso in statutes, contracts or wills not infrequently introduces new or independent matter, its true office and its general purpose is to restrict the sense or make clear the meaning of that which has gone before.' "

The residue gas has been once taken from the earth but it was excluded in calculating the tax on the liquid hydrocarbons and was returned to the Weed Sand. It has again been taken from the earth and has been sold to the Aluminum Company.

In construing the statute from its four corners we call attention to the wording of Section 1(1) of the Act and of Section 1(1) (a) of the amendment which is that the tax shall be paid by the producer "on the amount of gas produced and saved." Section 1(1) (a) and (1) (b) of the amendment simply change the rate of "said tax."

The residue gas in question here was injected into the earth but it was not sold for such purpose. It was not vented or flared and it was neither used nor sold for the purpose of lifting oil. It was not "saved" in the sense of being marketed and was properly excluded in calculating the tax on the liquid hydrocarbons extracted by appellant which tax has been fully paid by appellant and about which there is no controversy here.

Art. 7047b, supra, levies a tax on the occupation of producing gas and provides formulae for calculating such tax. Sec. 1 levies the tax on the "amount of gas produced and saved" and excludes from the calculation of the tax gas that is not saved. Section 1(2), which levies the tax on the liquid hydrocarbons extracted and which appellant has already paid, fixes such taxable value at "(3/5) of the gross value of all liquids extracted, separated and saved from such gas." This tax being calculated on the

provision that the residue gas was returned by cycling methods to some gas producing formation, here to the Weed Sand. In either of such events the tax is not calculated on gas that is not saved. It follows that the residue gas sold by appellant to the Aluminum Company of America was not saved but was excluded in calculating the tax paid by appellant and it has never been taxed.

In Smallwood v. Central Kentucky Natural Gas Co., Ky., 308 S.W.2d 439, 442, the court considered whether an oil and gas lease had been forfeited or abandoned through nonuse. The lease provided that:

"It is agreed that this lease shall remain in force for a term of five years from date, and as long thereafter as oil and gas, or either of them, is produced from said land by the lessee."

The facts showed that there were two wells on the lease. These had ceased to produce oil or gas and the Gas Company began the practice of piping into them gas from other sources in order to keep a supply on hand for local consumption. The court cancelled the lease and said that the term "produced" as used in the lease does not mean "stored."

The residue gas in question has now been "produced and saved". It was not included in the calculation of the taxes paid on the liquid hydrocarbons "extracted, separated and saved from such gas," and it is now subject to a tax on its market value as provided by Section 1(2), supra.

Appellant argues in substance that no tax is due on the residue gas because all of the gas from the Weed Sand (inclusive of the residue gas in question) has been processed at least one time through appellant's plant; all taxes due on the liquid hydrocarbons extracted and saved have been paid, and the residue gas has been returned to the Weed Sand and that such residue gas was then produced within the meaning of the statute. In support of this argument appellant cites W. R. Davis Inc. v. State, 142 Tex. 637, 180 S.W.2d 429, 433, and quotes from that opinion as follows:

"The occupation of refining liquids from gas is not therein taxed. It is true that the Act provides that 'where gas is processed for its liquid hydrocarbon content and the residue gas is returned by recycling methods to the same gas-producing formation underlying the land from which the gas is produced, the taxable value of such gas shall be three-fifths (⅗) of the gross value of all products extracted, separated and saved from such gas,' but such quoted provision merely provides the method of ascertaining the value of the original gas, and the producer thereof only is taxed, not the refiner."

Appellant then says:

"The underlined portion of this statement (the underlining was added) is the lode star for the solution of the sole problem in this case."

Davis was the processor or refiner of gas acquired from producers. He removed the distillates from the gas and returned the residue to the gas producing sand. The State sued Davis for occupation taxes levied by Art. 7047b and recovered a judgment therefor. As indicated by the above quote this judgment was reversed. The court was concerned with the question of who owed the tax on the liquid hydrocarbons extracted, separated, saved and sold by Davis and not with the residue gas.

The statement of the court supra was made in overruling a contention that part of article 2 of the then Art. 7047b was unconstitutional. In the above case the court considered the definition of the term "market value of gas produced in this State" as used in the section of the Act which is substantially the same as the above quoted section 1(2) and said:

"The statute says 'market value' shall be 'the value thereof plus any bonus, or premium, or anything of

value paid therefor, or any sum of money that such gas will reasonably bring if produced and sold', etc. This definition, read as a whole, and construed from its four corners, means that the total sale price is the amount on which the tax levied by this Act must be computed. Any other construction of this definition would destroy it."

Even if we accept the statement quoted by appellant as determining "the value of the original gas" such value is the taxable value at the time all liquids were extracted, separated and saved from such gas. The residue gas was returned to the gas producing formation and apparently then had no market value. At most it was stored. Smallwood v. Central Kentucky Natural Gas Co. supra. At any rate it was not "saved."

Appellant also cites us to our own opinion, Calvert v. Union Producing Co., Tex. Civ.App., 258 S.W.2d 176, 178, and quotes from that opinion as follows:

"It has been judicially determined that these liquid hydrocarbons called distillate are an integral and inherent part of the natural gas. Lone Star Gas Company v. Harris, Tex.Civ.App., 45 S.W.2d 664, error ref."

In the above cause the question for decision was: Were taxes on liquid hydrocarbons recovered from natural gas to be computed under subsections (1) or (3) of Section 1 of then Art. 7047b? We still agree that liquid hydrocarbons "are an integral and inherent part of the natural gas." This does not mean all of it.

The statute, Art. 7047b, supra, does not impose a tax on liquid hydrocarbons "extracted, separated and saved" from natural gas and another on the residue gas, but provides a method for calculating an occupation tax: on the amount of gas produced and saved, or on the "gross value of all liquids extracted, separated, and saved from such gas" when the residue gas is returned by cycling methods to some gas producing formation. Of course if such residue gas is sold for the purpose of injecting it into the earth or for lifting oil it would be taxable under subsection (1) of Art. 7047, supra.

Clearly the statute levies the tax on the market value of the gas as of the time that it is produced and saved. If at that time the liquid hydrocarbons, which "are an integral and inherent part of the natural gas," are not extracted, separated and saved but are marketed as such part then the market value of the gas includes all of its parts. However that is not the situation here. Only "inherent and integral parts" were marketed leaving the residue (also a part of the original gas) not produced and saved within the meaning of the statute and accordingly not subject to the tax until sold to the Aluminum Company.

As stated in W. R. Davis, Inc. v. State, supra, the total sale price of the gas is the amount on which the tax is to be computed. There could not be a total sale price if the sale price of a part of the gas is not included. Then the sale price of the liquid hydrocarbons—"integral and inherent part of the * * * gas," on which the tax has already been paid, and the sale price of the remaining part—the residue gas, make up the total sale price. Of course here the amount on which the tax is to be computed is the sale price of the residue gas.

The judgment of the trial court is affirmed.

Affirmed.